Dicken *vs*. Shepherd.

*Decree affirmed,*

(Decided November 25th 1864.)

JOHN B. DICKEN *vs*. AMOS P. SHEPHERD.

SLANDER: PLEADING AND EVIDENCE: SPECIAL DAMAGE.—In actions of slander founded on an alleged injury to the plaintiff in his business, resulting from words spoken of him by the defendant, where the declaration goes for special damages, the settled rule is: that, whether the words in themselves are actionable, or so only because of some special damage, no evidence of any particular loss or injury caused by the words spoken is admissible, unless such loss or injury is particularly alleged in the declaration as the special damage.

It is also well settled that the proof of such special damage must be limited to the evidence of persons to whom the slanderous words were spoken.

An action may be maintained on words spoken maliciously of one in reference to his trade or business, if they import or amount to a charge of insolvency, but it is essentially necessary in all such cases, not only to aver, but to show that the words were so spoken.

If the words have an uncertain signification and such as requires explanation by reference to some extrinsic matter to show that they are actionable, it must be shown that such matter existed, and that the words related thereto.

And where words are actionable only because of their effect on the plaintiff in his profession, trade or business, there must be a distinct allegation that the plaintiff was at the time of the scandal in such profession, or exercising such calling.

PRAYERS AND INSTRUCTIONS TO THE JURY: SLANDER.—An instruction which does not leave it to the jury to find the fact that the words charged were spoken of, and concerning the plaintiff in his trade or business, is fatally defective, whether the fact of so speaking them was averred in the declaration or not.

———: ———: PLEA OF JUSTIFICATION.—An instruction was: "that on the pleadings in the case the plaintiff in slander could recover on the finding of words varying from these alleged in the declaration, notwithstanding their finding should be for the defendant on the facts pleaded in justification." HELD:

That the instruction was bad—the variance between the words as alleged and proved being fatal.

The truth of the words complained of being pleaded, upon which without objection to the sufficiency of the plea, issue was joined.—HELD:

That the truth of the words being found according to the hypothesis of the prayer—the fact of malice was not then open for the finding of the jury.

It is an established rule that if a defendant justify specially, it is not necessary to deny the innuendos and epithets contained in the declaration; for if the fact be justified, the motive, intention and manner are immaterial

APPEAL from the Circuit Court for Allegany County:

This is an action of slander, brought by the appellant against the appellee, on the 5th of October 1858. The inducement set out in the declaration is briefly as follows: That the defendant, on the 21st October 1852, sold to the plaintiff a certain piece of land with a mill thereon, for $5,000, for which the plaintiff paid $2,500 in cash, and confessed a judgment for $2,500, the balance of the purchase money, with a stay of execution to the 1st October 1857; that the mill had been used by the defendant as a grist and merchant mill, and was intended so to be used by the plaintiff after the purchase, and that the defendant knew that it was so to be used; that the property was then worth $5,000, and that the plaintiff made valuable and useful improvements to the property, worth $2,000, and increased the value of it to $7,000; that the plaintiff was in good credit when he bought the mill, and could buy grain on credit, or borrow money for the use of his business without difficulty, and upon fair terms; that the defendant well knowing all these matters, and intending to injure the plaintiff, and intending to injure and destroy his credit and his said milling business, uttered and published the false and slanderous words as charged in the several counts, from 1 to 14, inclusive.

Dicken *vs.* Shepherd.

The counts relied upon for the purposes of this appeal, are the 2nd, 3rd and 14th.

The words charged in the second count, as spoken of the plaintiff and said property, and his inability to pay for it, without the *innuendos*, are: "Dicken will never be able to pay for it; tell your father to push him and get his money as soon as possible, for I am going to shut down on him, and he will never get it." The *innuendo* to this count shows that the defendant intended to charge the plaintiff with insolvency.

The words charged in the third count, as spoken of the plaintiff and the said mill property, are: "Dicken will never be able to pay for it." The *innuendo* also shows an intention to charge insolvency by the defendant against the plaintiff.

The words charged in the 14th count, as spoken of the plaintiff, are as follows: "Against the first of October next, he will owe me $2,600. I have prolonged the time for Dicken one year, to give your friends out there a chance to make their money out of him, and that he, defendant, was going to shut down on him against the 1st of October next; and if he owes you any thing, you had better be getting it." The *innuendo* is that the defendant thereby intended to charge the plaintiff with being insolvent.

The words as charged in the 2nd count are proved by Robert Chaney. The conversation with this witness, as contended by plaintiff, was in the spring of 1858, less than a year before suit was brought, as shown by J. Wilson's and Chaney's testimony.

The words as charged in the 3rd count are proved by John Wilson, Charles Berry, L. A. Hinkle and Robert Chaney. The conversation with Wilson was in the spring of 1858, less than a year before the suit was brought.

The words as charged in the 14th count are proved by

51     v. 22.

Joseph McElfish.   This conversation was in August 1858, and Shepherd says in that conversation that "he had prolonged the time with Dicken for one year, to give his friends a chance to make their money out of him," and the execution was in fact issued on the 10th September 1858.

The pleas are: 1st. That the defendant did not commit the wrongs alleged.   2nd. That he did not commit the wrongs alleged, or either of them, at any time within one year before this suit.   3rd. That the alleged causes of action did not, nor did either of them, accrue within one year before this suit.   And 4th. That the words spoken were true.   The case was tried upon issues joined on the 1st, 3d and 4th pleas, and in the course of the trial, six exceptions were taken by the plaintiff to the ruling of the Court below, and the verdict and judgment being in favor of the defendant, the plaintiff appealed.

*1st Exception.*—The plaintiff proved by Joseph McElfish the conversation with the defendant, and then asked the witness whether he was prevented from putting his wheat in Dicken's mill, to be ground, by what the defendant had said to him in relation to the plaintiff, and his indebtedness to the defendant; to which he replied that he was influenced in part by what Shepherd said to him, from putting his wheat in the plaintiff's mill, and in part in consequence of reports in the neighborhood, and that he can't say it was in consequence solely of what Shepherd said to him.   To this answer the defendant objected, as illegal testimony for the purpose of proving special damage by reason of the loss of custom of witness to the plaintiff's mill.   The Court excluded the testimony, though the counsel for the plaintiff said they offered it for all purposes for which it was legally admissible, and to this ruling the plaintiff excepted.

*2nd Exception.*—The plaintiff then asked this same witness "whether or not, if he had heard nothing except

Dicken *vs.* Shepherd.

what the defendant said to him concerning the plaintiff and his situation as to debts to the defendant, he would have refused to take grain to the mill of the plaintiff, either to be ground or for sale to the plaintiff; and whether or not, if it had not been for what the defendant said to him about the plaintiff, he would have taken his wheat for grinding or sale to the plaintiff's mill?'' To his answering this question the defendant objected, on the same ground as stated in the first exception, and upon the further ground that it was a leading question; the counsel of plaintiff offering the evidence as legally admissible for all purposes for which it was offered. The Court ruled that the question was not a proper one, and refused to permit the witness to answer it, and the plaintiff excepted.

*3d Exception.*—The plaintiff then offered to prove by this same witness, Joseph McElfish, that before he had the last conversation with Shepherd, detailed by him, he had been in the habit of selling grain to the plaintiff on credit, and that after this conversation he refused to sell his grain to the plaintiff, because he thought, from what Shepherd had said, that if Dicken could not pay what he owed Shepherd, he, witness, could not get his money out of him for what he sold. To the admissibility of so much of the testimony as relates to the refusal of the witness to sell grain to the plaintiff on credit, the defendant objected, and the Court sustained the objection and refused to permit the same to go to the jury, and the plaintiff excepted.

*4th Exception.*—The plaintiff proved by Robert Chaney, that some three or four years ago, (that is some three or four years prior to 1860, and more than one year prior to the commencement of this suit,) Shepherd said to the witness ''he expected to get his mill back, as he expected Dicken never would be able to pay for it, and he did not expect him to pay for it at the time he sold it to him,''

and that "he also told me to tell my father to make his money out of him as soon as he could, as he was going to shut down on him, and that if he did not, he would lose his money." The plaintiff then offered to prove, by David Chaney, that he is the father of Robert Chaney, who delivered to him the message from Shepherd, as above stated, and that at the time of the delivery of this message, the plaintiff was indebted to him in the sum of $160, money loaned to him by witness, and that by reason of this message, he called in from the plaintiff the money he had loaned him as aforesaid, which, but for this message, he would not have done, to which testimony the defendant objected, which objection the Court sustained, and refused to let the same go to the jury, and the plaintiff excepted.

*5th Exception.*—The plaintiff offered to prove, by Thomas McElfish, that his brother Joseph, whose testimony he had heard delivered in this cause, told him what Shepherd had said, as is before stated in the foregoing bills of exception; that witness had no conversation at any time with Shepherd on the subject, and that in consequence of such statement made to him by Joseph, he stopped putting wheat in the mill on deposit, as he had been in the habit of doing before that time. To this testimony the defendant objected, and the Court refused to permit said evidence to go to the jury, and the plaintiff excepted.

*6th Exception.*—This exception was taken to the refusal of the Court to grant the two prayers offered on the part of the plaintiff, and to the granting of the three prayers offered on the part of the defendant,—which were as follows:

*Plaintiff's 1st Prayer.*—The plaintiff by his counsel, prays the Court to instruct the jury, that if they shall find from the evidence in the cause, that the plaintiff purchased the mill and property mentioned in the declaration in this cause, from the defendant, for the purpose

Dicken *vs.* Shepherd.

and with the intent mentioned in the declaration; and that the plaintiff took possession of said mill, and carried it on and conducted the milling business, as mentioned in said declaration, and with the intent and purpose therein mentioned; and that the defendant knew of all said facts; and that the defendant maliciously and falsely published the words stated in the second, third and fourteenth counts of said declaration, or in either of them, of and about the said plaintiff, within one year previous to the bringing of the suit in this cause, then the plaintiff is entitled to recover.

*Plaintiff's 2nd Prayer.*—The plaintiff, by his counsel, prays the Court to instruct the jury, that if they shall believe from the evidence in the cause, that the defendant, within one year before the bringing of this suit, told the witness, Joseph McElfish, that "again-- the 1st of October, next, he (the plaintiff) would owe him (the defendant) the sum of $2,600; and that he had prolonged the time for him one year to give his friends out there a chance to make their money out of him, and if he (the plaintiff) owes you (the witness) anything, you had better be getting it;" and if they shall believe, that at the time of speaking said words, the said plaintiff was conducting a mill, as a merchant mill, and was engaged in the business of merchant milling, as stated in the declaration, such words are sufficient to entitle the plaintiff to recover upon the pleadings in this cause, although it may be true and found by the jury, that the plaintiff, was indebted to defendant as above stated, and that he had prolonged the time for the period and for the purpose above stated; and although it be true, that the defendant intended to issue an execution on a judgment of the defendant against the plaintiff, against 1st October, then next, (if they find the defendant had such judgment;) if the jury further believe, that the defendant spoke said words maliciously, with the intent to injure the credit of the plaintiff, and to convey

to the mind of the said witness, and that the witness so understood the language, that after 1st October, the plaintiff would be so circumstanced, that no money could be made out of his property to pay any debt he might owe said Joseph, or any other person, and if the jury find that plaintiff was not so circumstanced after 1st of October, then the plaintiff is entitled to recover.

*Defendant's 1st Prayer:*—The defendant, by his counsel, prays the Court to instruct the jury, that even though they shall believe, from the evidence in the cause, that the defendant uttered the words as proven by the testimony of James Wilson, William H. C. Tomlinson, Charles Bucey, Laurence A. Hinkle, Robert Chaney, George M. Blocher, John M. Buchanan and Edward McElfish, still the plaintiff is not entitled to recover in this cause, for any damages arising out of the utterance of such words; unless they shall find that the said words, or some of them, were uttered within one year before the bringing of this suit; or that the plaintiff, within one year before the bringing of this suit, suffered special damage in consequence of the speaking of such words or some of them; and that there is no proof in this cause, of any such special damage.

*Defendant's 2nd Prayer:*—The defendant, by his counsel, prays the Court to instruct the jury, that even if they shall believe, from the evidence in the cause, that the defendant held a conversation with John Wilson, as testified to by him, in the cars between Baltimore and Cumberland, in which the defendant said that the "plaintiff would never be able to pay for the mill property," still the plaintiff is not entitled to recover in this case, for any damages arising out of the speaking of such words, unless they shall further find, that said conversation occurred within one year before this suit was brought, or that the plaintiff, within one year before the bringing of this suit, suffered special damage, in consequence of the speaking

Dicken *vs.* Shepherd.

of such words, and that there is no proof in this cause of any such special damage.

*Defendant's 3rd Prayer:*—The defendant, by his counsel, prays the Court to instruct the jury, that even though they shall believe, from the evidence in the cause, that the defendant, within one year before the bringing of this suit, told the witness, Joseph McElfish, "that again—the 1st of October next, he (the plaintiff) would owe him (the defendant) the sum of $2,600, and that he had prolonged the time for him one year, to give witness' friends out there a chance to make their money out of him, and that he was going to shut down on him against the 1st of October, then next, and if he (the plaintiff) owed witness anything he had better be getting it,"—still that the plaintiff is not entitled to recover in this case, for the utterance of such words, unless they shall further find that the plaintiff suffered special damage in consequence thereof, and that there is no proof in the cause of any such special damage.

The Court refused to grant the prayers of the plaintiff, and granted the aforesaid prayers of the defendant. To which refusal of the Court (PERRY, J.) to grant the said prayers of the plaintiff, and to the granting the said prayers of the defendant, the plaintiff, by his counsel excepted.

The verdict of the jury, and judgment thereon, being for the defendant, the plaintiff appealed.

The cause was argued before BOWIE, C. J., and BARTOL, and COCHRAN, J.

*J. H. Gordon,* for the appellant.

1st. The words of these three counts are sufficiently proven as laid. Substantial proof of the words is all that is required. *Robinett vs. Ruby,* 13 *Md. Rep.*, 95. *Buller's N. P.*, 5. *Cook's Law of Defamation,* 89, (53 *Law*

*Lib.*) *Mailland vs. Goldney*, 2 *East.*, 426. *Miller vs. Miller*, 8 *Johns.*, 74. *Doncaster vs. Hewson*, 17 *Eng. Com. Law Rep.*, 297. 2 *Stark. on Ev.*, 618 *and notes.* 1 *Chitty's Pl.*, 435. 2 *Greenleaf on Ev.*, 1413, 1414. 1 *Stark. on Slan.* 374 *and notes, also* 375–6.

2nd. And the words need not all be proved; if a sufficient substantive charge is proved, no more will be required, although other words charged to have been uttered, are not proved. 1 *Stark. on Slan.*, 363, 364, 365, *and notes* 1 *and* 2, *page* 374 *and notes, and* 375–6.

3rd. The intention with which the words are uttered, as charged in the several counts, is part of the counts, and is for the jury to find true or not as laid. 1 *Chit. Pl.*, 400. 2 *Stark. on Sl.*, 51.

4th. If the jury find that the words charged in the several counts were uttered with the intent as laid, then the word so uttered amount to a charge of insolvency against the plaintiff in each case, and the words so uttered are actionable *per se.* 1 *Chit. Pl.*, 401. 1 *Stark. on Slan.*, 138, 139 140. *Hall vs. Smith*, 1 *Maule & Sel.*, 287. *Selby vs. Carrier, Cro. Jac.*, 345. *Squire vs. Johns, Cro. Jac.*, 585. *Stanton vs. Smith*, 2 *Lord Raymond*, 1480. *Lewis vs. Hawley*, 2 *Day's Rep.*, 495. *Chapman vs. Lamphere*, 3 *Mod.*, 155. *Davis vs. Davis, Nott & McCord*, 290.

5th. If the words in the 2nd, 3rd and 14th counts are actionable *per se*, there is abundant proof to show their publication as charged, and the Court below erred in rejecting the plaintiff's prayer.

6th. And the charge being one of general insolvency against the plaintiff, as shown particularly by the 14th count, it is sufficient to charge that the words were spoken and published of the plaintiff, without saying that they were published of and concerning his said business, because he could not be generally insolvent without being insolvent in his said business, "*omne majus continet in se minus.*" See authorities cited under the 4th point and

1 *Chit. Pl.*, 401, *note z and note s.* 1 *Stark. on Slan.*, 402. *Ib.*, 402, 403. *Stark. on Slan., vol.* 1, *p.* 138. *Masham vs. Bridges, Cro. Chas.*, 222. Act of 1825, ch. 112, sub ch. 5, sec. 73. 2 *Rob. Prac.*, 612, 613, 614. *Jones vs. Littler,* 7 *Mees & Wels.* 425. *Opinion of Park B.*

7th. Besides, the inducements, which form part of each count, show that the words of each count were uttered with the "intent to injure and destroy the said milling business of the said plaintiff," and the breach shows that they had the effect of "injuring and destroying the business of the mill." 1 *Chit. Pl.*, 402. See opinion of the Court in *Robinett vs. Ruby,* 13 *Md. Rep.*, 95.

8th. But suppose the words charged in any of these counts are not actionable *per se.* There is special damage laid, and proved by Thomas McElfish, and Charles Berry. And the Statute of Limitations is no bar to the recovery of damages sustained within a year previous to suit brought, even though the words were spoken more than a year before suit brought. Act of 1715, ch. 23, sec. 2. *Stat. of Jas.* 1, *ch.* 16 *sec.* 3. *VI Bac. Ab.*, 374, *late edition.* 1 *Stark. on Slan.*, 473, *late edition.*

9th. The Court erred in rejecting the testimony of Joseph McElfish in the 1st, 2nd and 3rd bills of exceptions. Also in rejecting the testimony of David Chaney in the 4th bill of exceptions. Also in rejecting the testimony of Thomas McElfish in the 5th bill of exceptions.

10th. The Court also erred in granting the prayers of the defendant, instructing the jury that there was no proof of special damages. Because there is evidence to prove special damages. Thomas McElfish is one of the parties named in the allegations of special damage in the declaration, and he says his brother Joseph told him what Shepherd had told *him*, and that he, Thomas, in consequence of the statement made to him by his brother Joseph, stopped dealing at the mill, as he had previously done.

Charles Berry also proved, that he had stopped his dealings at the mill in consequence of what he heard Shepherd say.

David Chaney also proved, that his son told him what Shepherd had said, and in consequence of it he called in from the plaintiff the money he had loaned him.

Joseph McElfish also proves that he stopped dealing at the mill, partly in consequence of what Shepherd told him.

The inducement shows that Dicken was engaged in the milling business, and that the words were published with intent to injure him in his said business. The 14th count shows that intending as aforesaid, he spoke and published of the plaintiff in a certain conversation with Joseph McElfish the words as on p. 401.

11th. The breach then alleges, that "by means whereof his said business was injured." Now it will be contended that these words were spoken of his business, and if it is a defect that the count does not state that they were spoken of, and concerning his said business, that defect can only be taken advantage of by special demurrer. 1 *Chit. Pl.*, 404, note p and 3. 1 *Saunders R.*, 2026, *n.* 3. *Nestle vs. Van Slick*, 2 *Hill*, 284.

As to the form of counts referring to common inducements see *Loomis vs. Swick*, 3 *Wend.*, 307. *Nestle vs. Van Slick*, 2 *Hill*, 284. *Burtch vs. Nickerson*, 17 *Johns.*, 217, 219. 4 *Rob. Prac.*, 701.

There is no prayer raising a question as to the sufficiency of the declaration, or pleas, the defendant's prayers only raise the question of the sufficiency of the testimony to show a cause of action, and therefore they assume the sufficiency of the declaration. *Guy vs. Tams*, 6 *Gill*, 84. Act of 1825, ch. 117. *Stockton vs. Frey*, 4 *Gill*, 406, 421. *Leopard vs. Ches. & O. Can. Co.*, 1 *Gill*, 222 and 227 &c. See also *Giles vs. Fauntleroy*, 13 *Md. Rep.*, 126 and 136. *Birney vs. New York & Wash. Tel. Co.*, 18 *Md. Rep.*, 342 and 355.

The defendant's 3rd prayer was improperly granted, because the prayer does not fairly present the plaintiff's claim to recover, it leaves out the fact that plaintiff was a miller, and that the language was alleged to injure his business and the innuendo charged his insolvency.

On the question of variance, see 2 *Stark. Ev.*, 618. *State vs. Reigart*, 1 *Gill*, 1. *Bryan vs. Loxton*, 22 *Eng. C. L. Rep.*, 412. *Kennedy vs. Lowry*, 1 *Binney*, 393. *Brown vs. Lamberton*, 2 *Binney*, 34.

*O. Miller*, for the appellee.

The ruling of the Court upon the 1st exception was correct. The declaration goes for special damage, and in such a case, whether the words be actionable *per se*, or whether actionable only by reason of the special damage, such damage must be particularly stated in the declaration before evidence of it can be given to the jury. The witness, Joseph McElfish, is not a party named in the declaration as being induced by the words or statements of the defendant not to put his wheat in the plaintiff's mill, and he was therefore not competent to testify as to any such damage, and it is not pretended the excluded testimony could be admissible for any other purpose.

In an action for slander, by which the plaintiff has lost his customers, he cannot give in evidence the loss of any whose names are not specified in the declaration. 2 *Starkie on Slander*, 55, 57. *Hartley vs. Herring*, 8 *T. R.*, 130. 1 *Roll. Abr.*, 58. *Vicars vs. Wilcocks*, 8 *East.*, 1. 3 *Phil. Ev.* 562.

The ruling of the Circuit Court, which is the ground of the 2nd exception, was also correct for the same reason stated in our point upon the 1st exception, and for the additional reason that the question asked was a leading one. *Winter vs. Donovan*, 8 *Gill*, 370.

The ruling of the Court as stated in the 3d exception, was also correct, for the reason and upon the authorities

relied on in our point upon the 1st exception, and for the additional reason, that there is no allegation in the declaration of any damage by reason of the refusal of any one to sell grain to the plaintiff on credit, in consequence of any words spoken by the defendant. In no case can evidence be admitted of any particular loss or injury sustained by the plaintiff in consequence of the defamation, unless it be *specifically stated on the record.* 2 *Phil. Ev.,* 562.

The testimony, the rejection of which is the subject of the 4th exception, to be admissible under the issues in this case, must show that *the damage,* that is, the calling in of the money, occurred within one year prior to the commencement of the suit.

Again, the testimony of Robert Chaney, does not establish the speaking of the words charged in any count in the declaration, and consequently, damage resulting therefrom cannot be given in evidence. The plaintiff must first prove the speaking of the *words charged,* before any evidence of damage is admissible.

But again, neither David nor Robert Chaney is mentioned in the declaration as a party from whom the plaintiff sustained any specific injury by reason of any words spoken by the defendant, and besides, the declaration no where charges any such special damage as was sought to be proved by this witness. 3 *Phil. Ev.,* 562. 2 *Greenlf. Ev.,* 414.

Thomas McElfish is one of the parties named in the declaration, whose custom is alleged to have been lost by reason of words spoken by the defendant, but he never heard these words from the defendant himself, nor did the defendant tell Joseph McElfish to communicate what he said to him to Thomas McElfish.

Proof of special damage must be confined to the evidence of persons who received the slanderous statements from the defendant himself. It will not do that the

words be communicated to the witness by some third party to whom the defendant spoke them. *Ward vs. Weeks*, 7 *Bing.*, 211. *Rutherford vs. Evans*, 4 *Carr. & Payne*, 74. 3 *Philips' Ev.*, 562, *note* 4, and 563 *note* 1.

*6th Exception.*—This exception was taken to the refusal of the Court to grant the two prayers offered on the part of the plaintiff, and to the granting of the three prayers offered on the part of the defendants.

In considering these prayers, some general propositions of law applicable to this case, will be stated:

1st. The words charged in the several counts in this declaration, and especially in the 2nd, 3rd and 14th counts, (those relied on in the plaintiff's prayers,) are clearly not actionable *per se*, and an action can be maintained on them only because, 1st, they were spoken of and concerning the plaintiff in the way of his trade or business, or 2nd, because of some special damage resulting to the plaintiff therefrom. *Sheely vs. Biggs*, 2 *H. & J.*, 363.

2nd. If an action can be maintained on these words because they were spoken of and concerning the plaintiff, in the way of his trade or business, then they must be clearly averred in the declaration, and clearly established by the proof, so to have been spoken, and to be false. 1 *Phillips' Ev.*, 827, (*Last Ed.*) 3 *Ib.*, 555., (*Last Ed.*) 2 *Chitty's Pl.*, 641, *e*. *Lewis vs. Chapman*, 19 *Barb.*, 252. *Wadsworth vs. Bentley*, 22 *Eng. Law & Eq. Rep.*, 176. *Tassel vs. Capron*, 1 *Denio*, 250.

Now in this case these words are not only not alleged in the declaration to have been spoken of and concerning the plaintiff in the way of his trade or business, but there is nothing in the words themselves, nor in the proof, showing them to have been so spoken.

Again, the words charged are not proved; in every case there is a fatal variance between the *probata* and *allegata*.

3rd. If the words are to be considered only by reason of special damage resulting therefrom, then such damage must be shown to have accrued to the plaintiff in this case within one year before the finding of this suit, and of such damage there is no proof in the case.

If the above positions are correct, then there was no error in the rulings upon the defendant's prayers. But there are defects in the prayers of the plaintiff equally fatal to each of them. *Richardson vs. Milburn,* 11 *Md. Rep.,* 347. *Stockton vs. Frey,* 4 *Gill,* 414.

1st. The first prayer does not leave it to the jury to find that the words charged in the several counts therein mentioned, were spoken of and concerning the trade or business of the plaintiff,—a matter which must, upon all the authorities be proved, if not necessary to be averred, and therefore was indispensable to be left to the finding of the jury.

2nd. The second prayer avers the plaintiff is entitled to recover under the pleadings in the cause, if the jury find the speaking of the words contained in the prayer, although there is no count in the declaration charging the speaking of them. The words in the prayer, and those charged in the 14th count, are essentially different. The Court could not say that the plaintiff was entitled to recover under the pleadings for speaking of words not charged in the declaration.

3rd. The second prayer is also defective for another reason. It avers in substance that the plaintiff is entitled to recover if the jury find the defendant spoke the words recited in the prayer, even though they may find them to be true, provided they find them to be spoken maliciously. This, it is believed, is not the law of slander at the present day, for if it was, the truth of the matter spoken could not be pleaded in bar, or given in evidence, save in mitigation of damages. It cannot be that a man, if he truthfully declares he has a judgment of a particular

amount against another, that he has prolonged the time for its payment, and now means, by a particular day, to issue execution on it, is liable to an action of slander for so declaring, even though he may say he had prolonged the time in order to give his friends a chance to make their money out of his debtor, and that they had better be getting it. 2 *Stark. on Sl., Prelim. Discourse,* 34, 35.

COCHRAN, J., delivered the opinion of this Court.

This suit was brought by the appellant to recover damages for alleged slanderous words spoken of him by the appellee. Of the counts contained in the declaration, only the 2nd, 3rd and 14th are relied on, as material to the questions raised on this appeal. The case proceeded to trial upon issues joined on the pleas of not guilty, limitations, and the truth of the words declared on in justification; during the course of which, the appellant took five exceptions to the rejection of evidence, and one to the rejection of his prayers and the granting of three prayers offered by the appellee. In passing on the questions of evidence presented by these exceptions, it will be more convenient, as well as intelligible, to state briefly, the rules by which they must be determined.

This action is founded on an alleged injury to the appellant in his business, resulting from words spoken of him by the appellee, and in accordance with that state of fact, the declaration goes for special damages on all the counts necessary to be considered here. The settled rule in all such cases, whether the words in themselves are actionable, or so only because of some special damage, is, that no evidence of any particular loss or injury caused by the words spoken, is admissible, unless such loss or injury is particularly alleged in the declaration as the special damage. It is also well established, that the proof of such special damage must be limited to the evidence of persons to whom the slanderous words were spoken.

These propositions, with a reference to the authorities from which they are deduced, may be found in 3 *Phil. Ev.*, 562. (*4th Am. Ed.*) and 2 *Greenleaf Ev.*, 454, *note*. Testing the admissibility of the evidence contained in the exceptions under consideration by these rules, the correctness of the ruling of the Court below cannot be doubted. The evidence in question was all of it obnoxious to one or the other of the rules above stated. Other well founded objections are made to a portion of this evidence, but as we shall affirm the rulings of the Court, for the reasons already given, it is not material that those objections should be considered here.

The appellant's 1st prayer presents the question whether the alleged slanderous words, as laid in the 2nd, 3rd and 4th counts of the declaration, were actionable without proof of special damage. It *is* unquestionably true, that an action may be maintained on words spoken maliciously of one in reference to his trade or business, if they import, or amount to a charge of insolvency; but it is essentially necessary in all such cases, not only to aver, but to show that the words were so spoken. If the words have an uncertain signification, and such as "require explanation by reference to some extrinsic matter to show that they are actionable, it must be shewn that such matter existed, and that the words related thereto." And where words are actionable only because of their "effect on the plaintiff in his profession, trade, or business, there must be a distinct allegation that the plaintiff was at the time of the scandal, in such profession or exercising such calling." 1 *Chitty*, 400, 401. *Lewis vs. Chapman*, 17 *Barb.*, 252. *Wadsworth vs. Bently*, 22 *Eng. Law and Eq. Rep.*, 176. 1 *Phil. Ev.*, 555. Looking to the words declared on here, we do not see that their import was such as to involve in any way the appellant's trade or business, and certainly they are not laid in the declaration as so spoken. Even admitting that the

words, as charged in these counts, were actionable, the proof admissible under the plea of limitations, does not show that the appellee uttered them, or any words of precisely the same import. But, without discussing the question of variance, the prayer is objectionable, because it does not leave to the jury the finding of the fact that the words charged in these counts were spoken of and concerning the appellant in his trade or business; a defect fatal to the prayer, whether the fact of so speaking them was averred in the declaration or not.

The appellant's 2nd prayer is also objectionable. In effect, it is an instruction to the jury, that the appellant is entitled to recover under the pleadings in the case, if they should find that certain words recited in the prayer were spoken by the appellee maliciously, and with the intent to injure the credit of the appellant, although they should further find that the words so spoken were true. The proposition is, that on the pleadings the appellant could recover on the finding of words varying from those alleged in the declaration, notwithstanding the finding should be for the appellee on the facts pleaded in justification. In the argument of this proposition, the appellant, while admitting a formal variance of the words in the prayer from those contained in the 14th count, nevertheless insisted that their import was substantially the same, and if found by the jury, that he would be entitled to recover on that count. Our understanding of the words recited in the prayer and those alleged in the declaration, does not lead us to that conclusion; and we may further add that the testimony of McElfish, the witness relied on for the proof of the words, shows a substantial variance from those contained in both prayer and declaration. It appears from the evidence of this witness, assuming that it was admissible under the plea of limitations, that the appellee made some inquiry of ,him as to the appellant's indebtedness to his customers, and that the witness then asked the appellee

53    v. 22.

how much the appellant owed him, to which the appellee replied: "$2,600 *against the 1st of October following, when it would become due;*" that "*he had prolonged the time with Dicken one year, to give his friends out there a chance to make their money out of him,*" and that "*if he owed me* (*the witness*) *anything I had better be getting it, as he intended to shut down on him against the 1st of October, as he could not wait with him any longer than that time.*" It is true that the words, set forth in the prayer and alleged in the declaration, are among those shown by this testimony; but it cannot be questioned, that the proof, in the same connection, of the additional facts that the words were spoken in answer to the witness' question, and that the appellee's inability to wait longer than the 1st of October was given as a reason for the statement made, gives to them an import widely different from that attributed to them in the declaration and prayer. In our opinion the variance thus shown is fatal.

But the prayer presents another question requiring some notice, and that is, in regard to the legal effect of finding the facts, pleaded in justification. Malice, in making a communication, is undoubtedly necessary to constitute the communication an offence; but it is often difficult to apply the rule distinguishing cases where malice may be presumed, or found as matter of fact from those where, as matter of law, there can be no such finding or presumption. But according to our apprehension of the case, that difficulty does not exist here. The office of a plea justifying words declared on, as to secure to a defendant the privilege of making such a case, by proof of the matter pleaded, as will excuse the words and bar the presumption of malice. In this case the truth of the words was pleaded, upon which without objection to the sufficiency of the plea, issue was joined; and the truth being found according to the hypothesis of the prayer, the simple question is whether

malice was a fact still open to the finding of the jury. We think it was not. The established rule is, if a defendant justify specially, that it is not necessary to deny the innuendos and epithets contained in the declaration; for, if the fact be justified, the motive, intention and manner are immaterial. 1 *Stark. on Slan.*, 422. 1 *Chitty,* 477. *Astley vs. Younge, Burr.*, 807. The several propositions presented by the prayers of the appellee, we think are substantially correct. The principles referred to, and applied in our consideration of the questions raised by the exceptions taken to the rejection of evidence, so far justify the instructions contained in these prayers, as to render a more particular notice of them unnecessary. Finding no material error in the rulings of the Court below, we shall affirm the judgment.

*Judgment affirmed.*

(Decided November 25th 1864.)