(Decided 1st March, 1889.)

CHARLES G. BLUMHARDT *vs.* CHARLES ROHR.

*Slander—Words actionable Per se—Evidence—Objection to Prayers—Measure of Damages—Malicious—Instruction—Practice—Amendment—Pleading.*

In an action for slander the declaration alleged that on or about a certain day, "the plaintiff then being, as he still is, engaged in the lucrative and profitable business of butchering cattle for sale," the defendant, contriving to injure the plaintiff in his said business,

spoke and uttered of the plaintiff and his said business the false, malicious and slanderous words : "It is better to buy Western beef than to buy beef from a slaughter-house where condemned or diseased cattle are slaughtered;" meaning thereby that the plaintiff kept such a slaughter-house, and that he was slaughtering and selling the carcases of diseased cattle for meat and human food ; and also the false, malicious and slanderous language : "Did you hear of those diseased 'stillery bulls Rohr (meaning the plaintiff) was getting, and selling the meat at four and four and a half cents, and bulls are selling for that; it is cheaper to buy the meat than bulls "—meaning thereby that the plaintiff was slaughtering and selling the carcases of diseased cattle for meat and human food. HELD :

That the words thus charged were actionable *per se*, and there was no need for other *colloquium* or innuendo, though the innuendo was clearly stated, and stated that the charge was of selling diseased meat for human food.

The use of the slanderous words charged is presumed to be hurtful to some degree, and the admission of the testimony of a witness that he could not tell how much reports of this sort injured plaintiff's business, is not erroneous.

It is not necessary to set out the offence supposed to be imputed by the slanderous words used, with the same precision as is required in an indictment. If it is done in such language as in ordinary "lay conversation" will impute or be understood to impute guilt, that will be sufficient.

The testimony of the plaintiff as to how many cattle he was in the habit of killing per week before the slanderous words were spoken, and how many afterwards, was admissible as proof of general damages.

The defendant having justified by pleading the truth of the statements complained of as slanderous, and issue having been joined thereon, the plaintiff was entitled to prove he was not selling diseased meat, or that which was unfit for human food, and evidence therefore to show at what stage of *pleuro-pneumonia* in cattle the meat became diseased, was admissible.

The admission of evidence that proper precautions were taken at the plaintiff's place of slaughtering to destroy diseased animals, and of evidence respecting the construction of the buildings,

which was given by an expert, and as to the condition of the premises, is not such error as will warrant a reversal.

An objection to prayers, that thay do not say " that the jury must find from the evidence," is hypercritical, all instructions being badse on the evidence.

The plaintiff not having asked in his prayers the consideration of any loss of individual customers, whose names were not mentioned in the *narr.* and of which some evidence was not given, the jury may properly be instructed that the measure of damages should be such an amount as would compensate the plaintiff for the injury to his feelings and character occasioned by the words spoken, and also for such injury as was the natural, direct and reasonable consequence of such words, and that they might also award exemplary and punitive damages as a punishment to the defendant.

The word "malicious" in this action is not to be considered in the sense of spite or hatred against a person, but as meaning that the party is actuated by improper and indirect motives, other than the mere purpose of protecting the public health, or vindicating public justice.

The butchers had formed a union, of which the defendant was a member, to keep out Western meat, and confine their sales to home production. The defendant withdrew from the union and was reported as having bought Western meat before he withdrew. The butchers were teasing him about it, when he replied with the charges against the plaintiff, the only butcher who was then engaged in killing cattle. HELD:

That there was no error in refusing to instruct the jury there was no evidence of express malice, especially as the defendant had by plea asserted the truth of the slanderous charges.

Where leave is given to add counts "three and four," to the *narr.* already filed in an action for slander, it is not necessary to append to them a claim for damages, as they would be introduced in their numerical order, so as to precede the general claim of damages.

APPEAL from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

*First, Second, Third, Fourth, Fifth, Sixth,* and *Seventh Exceptions* stated in the opinion of the Court.

*Eighth Exception*—The plaintiff asked the Court to instruct the jury as follows:

1.  If they find that the defendant, at the Lexington market in Baltimore City, in the presence and hearing of George Long, Abraham Frank and other persons, spoke of the plaintiff and his business the words charged in the third count of the declaration, and in the sense there charged, and that such words were untrue, then their verdict must be in favor of the plaintiff.

2.  If they find that the defendant in the restaurant of Frederick Zimmer, in the City of Baltimore, in the presence and hearing of Charles Reeder, and other persons, spoke of the plaintiff and his business, the words charged in the fourth count of the declaration, and in the sense there charged, and that such words were untrue, then their verdict must be in favor of the plaintiff.

3.  If they find their verdict in favor of the plaintiff under either of the preceding instructions, the measure of damages is such an amount as in the opinion of the jury will compensate the plaintiff for the injury to his feelings and character occasioned by the words so spoken, and also for such injury as was the natural, direct and reasonable consequence of such words, and they may also award exemplary and punitive damages as a punishment to the defendant.

4.  The word "malicious" in this form of action, is not to be considered in the sense of spite or hatred against a person, but as meaning that the party is actuated by improper and indirect motives, other than the mere purpose of protecting the public health, or vindicating public justice.

The defendant asked the following instructions:

1.  That there is no evidence from which the jury can find for plaintiff under the first and second counts of the declaration.

2. That if the jury find from the evidence that the words spoken of the plaintiff in this case, by the defendant, if they find they were so spoken, were true, then their verdict must be for the defendant.

3. That the only damages, if any, the jury can find under the third count in the declaration, is such damages as the plaintiff may have sustained from loss of the custom of the witness, Abraham Frank, and there is no evidence legally sufficient to find the plaintiff suffered any damage by the speaking of said words to said Abraham Frank.

4. That before the jury can find for the plaintiff in this action, they must find from the evidence that the words alleged to have been spoken—if they find they were spoken—were spoken concerning the plaintiff, Charles Rohr, and no one else.

5. That if the jury should find for the plaintiff, that there is no evidence of express malice, and in rebuttal of implied malice, and in mitigation of damages, the jury may take into consideration all the circumstances, rumors and reports in circulation, if they shall find from the evidence there were rumors and reports in circulation concerning plaintiff and his business, which had been brought to the knowledge of the defendant, if they shall so find.

The Court (WATTERS J.,) granted the plaintiff's prayers, and refused the third and fifth prayers, of the defendant. The defendant excepted to this ruling of the Court, and the verdict and judgment being against him, he appealed.

The cause was argued before MILLER, YELLOTT, STONE, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

R. E. Jordan, and H. P. Jordan, for the appellant.

Blumhardt *vs.* Rohr.

*S. A. Williams,* and *D. G. McIntosh,* for the appellee.

IRVING, J., delivered the opinion of the Court.

· The appellee sued the appellant for slander. The *narr.* contained four counts, alleging in various words and form the slander claimed to have been uttered injuriously to the plaintiff's business and character. The appellant pleaded not guilty, and justification because that which was alleged to have been spoken was true.

As the Circuit Court instructed the jury, that there was no evidence upon which the appellee could recover, under the first and second counts of his declaration, the only counts now under consideration are the third and fourth, under which recovery was permitted and obtained. As questions arise involving the sufficiency of these counts to support the action, we insert them here: "3. And for that on or about the twenty-third day of July last past, the plaintiff then being, as he still is, engaged in the lucrative and profitable business of butchering cattle for sale, the defendant well knowing the premises, and contriving to injure the plaintiff in his said business, at Lexington Market, in the City of Baltimore, in the presence and hearing of George Long, Abraham Frank and many other persons, spoke and uttered of and concerning the plaintiff and his said business, the false, malicious and slanderous words following, to wit: 'It is better to buy Western beef, than to buy beef from a slaughter-house where condemned or diseased cattle are slaughtered,' meaning thereby that the plaintiff kept such a slaughter-house, and that the plaintiff was slaughtering and selling the carcases of diseased cattle for meat and human food; whereby the plaintiff suffered great loss and damage to his said business, and to his character and reputation, and whereby the plaintiff in his busi-

ness lost the trade and custom of the said Abraham Frank, and also a certain Ormond Hammond, Jr., and also divers other persons.

"4. And for that on or about the tenth day of March last past, the plaintiff then being, as he still is, engaged in the lucrative and profitable business of butchering cattle for sale, the defendant well knowing the premises, and contriving to injure the plaintiff in his said business, in the restaurant of Frederick Zimmer, in the City of Baltimore, in the presence of Charles Reeder, and many other persons, spoke and uttered of and concerning the plaintiff, and of and concerning his said business, the false, malicious and slanderous language following, to wit: ' Did you hear of those diseased 'stillery bulls Rohr (meaning Charles Rohr, the plaintiff,) was getting and selling the meat at four and four and a half cents, and bulls are selling for that; it is cheaper to buy the meat than bulls,' meaning thereby that the plaintiff was slaughtering and selling the carcases of diseased cattle for meat and human food; whereby the plaintiff suffered great loss and damage to his said business, and to his character and reputation; and whereby also the plaintiff, in his said business, lost the trade and custom of divers persons, to wit: of a certain Abraham Frank and Ormond Hammond, Jr., and many others."

Verdict and judgment having been obtained in favor of the plaintiff, a motion was made in arrest of judgment which was overruled, and we will first consider that ruling before passing on the exceptions taken during the trial.    The verdict was a general verdict in favor of the plaintiff, and was therefore a finding adversely to the defendant upon the plea of justification.    If any count in the *narr.* was good, it needs no citation of authority at this day for holding the judgment properly sustained.

The appellant contends that the words charged to have been uttered are not actionable *per se,* as they do not charge the appellee with the commission of a criminal offence, and that to make them actionable because of special damage, they are not accompanied with the *colloquium* to show in what sense they were used, for the words used do not state that the meat was being sold for human food.

It was at common law a punishable offence to sell diseased meat for human food. 1 *Starkie on Slander, star page* 39; 2 *East's Pleas of the Crown,* 821; 2 *Wharton's Crim. Law,* 1434; 4 *Bl. Comm.,* 162. The offence was a misdemeanor punishable by fine or imprisonment. Whether the punishment was of that character, that under the decision of this Court in *Griffin and Wife vs. Moore,* 43 *Md.,* 252, it would *necessarily* render it actionable *per se,* is not important for us here to decide; because the slander charged is of one engaged in business or trade, and is alleged to have been spoken of the appellee and his business, and the words used, if used as charged on their face, were calculated to injure his business, and were therefore actionable *per se. Folkard's Starkie,* 177 and 178, where numerous authorities are collated in support of this rule. *Dicken vs. Shepherd,* 22 *Md.,* 399. The declaration distinctly avers, that the plaintiff was in business when the words were uttered, and was still so when action was brought. The words being in themselves *prima facie* actionable, there was no need for either *colloquium* or *innuendo;* though the *innuendo* is clearly stated, and states that the charge was for selling diseased meat for human food. It is not necessary to set out the offence supposed to be imputed with the same precision as is required in an indictment. If it is done in such language as in ordinary "lay conversation" will impute, or be understood to impute guilt, that will be sufficient. *Petersen vs.*

*Sentman,* 37 *Md.,* 155; *Odgers on Libel and Slander,* 105 and 106. And where the charge is made *of a trader* it need not be in positive language, but any words which will imply guilt are sufficient. And if the words refer to trade, *colloquium* is unnecessary. 9 *Bacon's Abr., Title Slander,* 52; *Odgers on Libel and Slander,* 120 and 123. The *narr.* having alleged the plaintiff to be a butcher, engaged in butchering and selling cattle, the ordinary and natural understanding of that term, "butcher," as in common use, would be understood to be, that he was killing and selling cattle for human food. No other idea would be natural. And certainly where the *innuendo* so expressly avers, there can be no doubt that the third and fourth counts set out a good cause of action, without further *colloquium;* and the motion in arrest was properly overruled. It was suggested, that the omission to append a claim for damages to the counts proposed to be added, and which were allowed as amendment, was a fatal omission. But we think a fair and proper construction of the leave *to add* these counts, would introduce them into the *narr.* in numerical order, so as to precede the general claim of damages. The leave was not to file a new *narr.,* but to add counts "three and four" to the *narr.* already filed. Therefore they would follow in regular order, and the claim of damages would follow all as the unifo·m practice obtains. To hold otherwise and strike down the *narr.* for this supposed defect, would be forcing a technical rule into application.

The first exception is to a statement of Charles Reeder, a witness for the plaintiff, with respect to the injury done the plaintiff by the words uttered. The witness, after proving the utterance of the words alleged to have been used in his presence, said in reply to a question which is not given, that "he could not tell how much reports of this sort injured Rohr's business,

should think it would necessarily injure it." · The exception is to the admissibility of testimony "as to how much reports of this sort injured Rohr's business;" that is to say, (we suppose) to that statement · of Reeder. The law presumes it is hurtful to some degree, and that is all witness testified to. He did not attempt to fix any measure of damages. He says he can not say how much. So there was no opinion expressed which was hurtful, and if he was not competent as an expert, engaged in a kindred business, to express an opinion, he has expressed none beyond that which the law implies, and we see no error in the ruling.

The second exception was to Rohr's own statement as a witness, as to how many cattle he was in the habit of killing per week before the slanderous words were spoken, and how many afterwards—*i. e., seventy-five to a hundred* before, and not more than *forty* afterwards. The objections formulated in the exception are, "1. Because it is an offer to prove special damages not alleged in the declaration. 2. Because the declaration does not entitle the plaintiff to offer evidence of special damage to business." This objection was not well taken, and there was no error in admitting the evidence. The slander complained of was one affecting the plaintiff's business, from which the law presumes general damage, and gives the right of action for it. In order to assess the damages, the jury must have some mode of estimating them, and that was what was sought by the plaintiff's statements to give to the jury. It was proof, not of special damages, but of general damages, and was therefore entirely proper. It was the general loss the trader had suffered which was being shown. *Odgers on Libel and Slander*, 292–317; *Ingram vs. Lawson*, 6 *Bingham's New Cases*, 216.

In the third exception the defendant proved by a witness, that he knew the plaintiff and his sons; and

that he believed they were the salesmen of their father at his store on Paca street, and that he bought meat of the sons at the Paca street store. Having supposed he had thus laid the foundation for the jury to find the agency of the sons for their father, Charles Rohr, the plaintiff, they asked whether witness had "any conversation with Jacob Rohr, one of the sons and salesmen, with reference to this condemned or diseased meat, and what it was?" It is doubtful whether a foundation was laid for finding the agency of the son to make declarations about the meat sold by him, to bind his father; or whether it was within the scope of his employment to make statements respecting it; but without deciding that it was, we may assume, for argument sake, that the defendant's theory was right, and still it does not appear what the answer would have been. It may not have been either material or relevant. For aught that appears, its exclusion worked no harm to the appellant. It might have proved exculpatory of the appellee. In order to our finding there was error which injured appellant, what was expected to be the reply ought, at least, to appear. *Blaen Avon Coal Co., et al. vs. McCulloh,* 59 *Md.,* 421. What the witness was expected to answer does not appear, and we are unable to find error in this ruling.

The appellant had justified, by pleading the truth of the statements complained of, and issue was joined thereon. It was proper, therefore, for the appellee to prove he was not selling diseased meat, or that which was unfit for human food. That is what he was attempting to do by the evidence objected to in the fourth exception, and the fifth exception. It was not, perhaps, material to the inquiry, under the issues, to know the symptoms of *pleuro-pneumonia* in cattle, or any thing of the progress of the disease; but, at *what stage* the meat became diseased was a fact proper to be

given as a *link* in the chain of proof that the meat the
plaintiff was selling was not diseased.   So that we see
no error in the fourth exception.   The appellant in
the fifth exception objected to the evidence of the fact
that proper precautions were taken, at (Rohr's) the
plaintiff's place of slaughtering, to destroy diseased
animals, and in the construction of his buildings.   The
evidence respecting the construction of the buildings
was being given by an *expert*, but was not particularly,
if at all, relevant.   Still we can not see how the ruling
admitting the evidence could possibly damnify the
appellant; and, in remote degree, it did tend to show
effort on plaintiff's part to do right.   The same may be
said of the evidence excepted to in the sixth exception,
as to the condition of the premises, where the cattle
were killed.   There was no reversible error in either
case.

The seventh exception is thus stated: "Henry Rohr,
a witness on behalf of plaintiff, in rebuttal, testified:
'am a son of plaintiff; was book-keeper for father dur-
ing the month of June; and produced the books for the
purpose of contradicting the witness Warner, as to
sales of beef at two cents, to O. Hammond and others;
to the admissibility of which said books and the entries
therein, as evidence for the purpose offered, the defend-
ant objected, but the Court overruled the objection,
and permitted the books and entries therein to go to
the jury." This statement does not contain enough
for us definitely to pass on the ruling.   If the books
were books of *original entries, made contemporaneously
with* the transactions recorded, and made by *the witness
himself,* and he knew they were accurately and truth-
fully recorded at the time, the books would be evidence
to go to the jury, not conclusive, but as a circumstance,
if the plaintiff was suing the vendee of meat recorded
as sold to him; and in this case, they would be circum-

stantial evidence for the purpose offered, if the essential conditions existed as above recited. *Elder vs. Warfield*, 7 *H. & J.*, 292; *Bullock vs. Hunter*, 44 *Md.*, 416. For the purposes of this decision we must assume, as the contrary does not appear, the Court had evidence of those essential particulars, or they would not have admitted this proof, and we can not pronounce the ruling erroneous.

The eighth exception embraces the prayers granted and rejected. The Court granted all the plaintiff's prayers, and rejected the third and fifth prayers of the defendant, and the defendant excepted to that action of the Court.

The objection made to the plaintiff's prayers, that they do not say "that the jury must find from *the evidence*" is hypercritical. All instructions are based on the evidence; and the jury are told that if they find, which means, without possible chance of misleading, that, if the evidence convinces them of the state of facts set out in the prayer, then they must find for the plaintiff. The other objections to the first and second prayers are substantially the same as those made to the *narr.* in the motion to arrest judgment, of which we have already disposed by deciding that the third and fourth counts set out a good cause of action. We see no valid objection to the plaintiff's first and second prayers.

The objections to the plaintiff's third prayer are not well founded. The third and fourth counts of the declaration alleged both *general* and *special* damages. So far as the general damages are concerned, it is not necessary to add any thing to what we have said in relation to the second exception as to the admissibility of evidence of general damages. In respect to special damages, the plaintiff has not asked in his prayers the consideration of any loss of individual customers

whose names are not mentioned in the *narr.*, and of which some evidence was not given. Special damages were not essential to this action, although they were provable in aggravation of damages, provided they have been alleged with sufficient particularity to give the defendant notice of the case he had to meet. *Odgers on Libel and Slander,* 317; *Dicken vs. Shepherd,* 22 *Md.,* 399. That was done in this case. The third prayer properly enumerates the various things the jury might consider in estimating the damages, and in such way as has met the approval of this Court in various cases of kindred nature. *Gaither vs. Blowers,* 11 *Md.,* 553; *Wilms vs. White,* 26 *Md.,* 381; *Byers vs. Horner,* 47 *Md.,* 23; *Nolan and Wife vs. Traber,* 49 *Md.,* 461; *Negley vs. Farrow,* 60 *Md.,* 158.

The definition of the word "malicious," as given to the jury in the appellee's fourth prayer, is fully supported by authority, and was in no sense misleading. *Mitchell vs. Jenkins,* 5 *B. & A.,* 594; *Negley vs. Farrow,* 60 *Md.,* 158.

The third prayer of the appellant was properly rejected. It excluded the plaintiff from any right to general damages, and sought to confine his recovery to special damage, which was also alleged in the *narr.*

The fifth prayer of the appellant asked too much. It asked instruction that there was "no evidence of express malice, and in rebuttal of implied malice, and in mitigation of damages, the jury may take into consideration all the circumstances, rumors and reports in circulation, if they shall find from the evidence there were rumors and reports in circulation concerning the plaintiff and his business, which had been brought to the knowledge of the defendant, if they shall so find." The prayer as a whole embodied three propositions: 1, that there was no evidence of express malice; 2, that the rumors known of by the defendant might be re-

garded in mitigation of damages; and 3, in rebuttal of implied malice. If either of these propositions could not be endorsed by the Court, the prayer, as framed, was correctly rejected. We do not think the Court could say there was *no evidence* of express malice; that is to say, that there were no circumstances from which the jury could not infer it. The butchers had formed a union to keep out Western meat, and confine their sales to home production. Blumhardt, the appellant, was one of the members. Rohr was the only person killing cattle. Blumhardt was reported as having bought Western meat before he withdrew from the union; and then withdrew. The butchers were twitting and teasing him about it, when he replied with the charges against Rohr, the only butcher who was then engaged in killing, as the witnesses stated. From these circumstances the jury might justifiably infer and find that the appellant, irritated by the teasing of him for buying Western meat, vented his spleen upon the appellee, who was killing home-raised cattle for market. The kind of malice which was necessary to support the action, we have said, did not involve *actual hatred of, or special spite against,* the plaintiff, and we do not think the Court erred in refusing to say that, from all the circumstances, the jury could not find there was some malice toward the plaintiff. Besides, the appellant had by plea asserted the truth of the charge his language imputed; and if untrue, as the jury found it to be, it was a re-assertion of the slander, and, connected with other circumstances suggestive of malice, *it* could be considered as *some evidence* of malice; or, as Chief Justice PARSONS expresses it in *Wolcott vs. Hull,* 6 *Mass.,* 514, where the defendant justified, and with proof sought to maintain the charge, "it is evidence of continuing malice." *Shilling and Wife vs. Carson,* 27 *Md.,* 186; *Rigden vs. Wolcott,* 6 *G. & J.,* 419; *Odgers*

*on Libel and Slander*, 273, 485, 541.   This is enough to condemn the prayer as offered.   The judgment must be affirmed.

*Judgment affirmed.*

(Decided 26th March, 1889.)