## CHARLES E. COFFIN *vs.* ANDREW W. BROWN.

*Libel—Pleas of Justification—Privileged Communications—Publication of Charges Against Public Officer—Evidence—Aggravation of Damages—Republication of Libel—Opinion of Trial Court Misleading to Jury.*

A publication defamatory of a public officer is not privileged although made in good faith, and in an action against the person making such publication he must either prove the truth thereof or answer in damages.

In an action for a libel which charged that the plaintiff "has no moral character," a plea alleging that the plaintiff was the agent of a company to sell certain articles, collect the money therefor and return it to the company, and that plaintiff received articles from the company, and had not returned the same or the value thereof, is insufficient as a plea of justification, since it does not allege that the plaintiff collected the money for the articles sold.

Where the libel charged that the plaintiff was a man that "can be induced to perpetrate any crime in politics that would pay him" the defendant cannot justify by showing that plaintiff bribed a voter at an election held *after* the date of the publication of the libel.

When the defendant in an action of libel pleads the truth of the matter charged by way of justification and fails to maintain the plea by proof, then such plea is evidence of malice and an aggravation of the wrong.

During a political campaign in which the Governor of the State was a candidate for re-election on the Republican ticket, the defendant, who was a prominent Republican, wrote to the Chairman of the Democratic State Central Committee, the manager of the campaign against the Governor, referring to the Governor's appointment of the plaintiff as a supervisor of elections, and stated that this man (the plaintiff) "was a Justice of the Peace under Democratic rule and at that time kept a speak-easy where he sold whiskey and then as Justice fined the men for disorderly conduct. He helped stuff the ballot-box at the Republican primary in V. District two years ago," etc., etc. "I shall therefore support Col. Smith and hope all Republicans and Democrats who believe in the purity of elections will do the same." In an action of libel, *held,.*

1st. That defendant's letter was not a privileged communication, as being made in pursuance of a public duty and without express malice.

2nd. That the plaintiff is entitled to recover punitive damages in the discretion of the jury.

3rd. That the jury was properly instructed that the defendant's unsustained plea of justification is in the nature of a repetition of the libel and is to be taken as evidence tending to show express malice in the original publication and is therefore a matter in aggravation of damages.

4th. That a circular containing defendant's letter which was publicly distributed is not admissible in evidence unless it is shown that either the defendant or the person to whom the letter was sent was connected with the publication of the circular, so as to make this re-publication a natural consequence of the original libel.

5th. That it was for the jury to determine whether the re-publication of the letter in the circular was a natural consequence of defendant's writing of it, and a statement by the trial Judge upon ruling the circular to be competent evidence to the effect that the publication in the circular was such a natural consequence, constitutes reversible error, since the jury would be led to think that this question had been determined by the Court.

A statement made by a trial Judge in ruling upon the admissibility of evidence which is calculated to lead the jury to think that the evidence admitted proves a certain fact which it was within the province of the jury to find, is error.

Appeal from the Circuit Court for Prince George's County (MERRICK, J.), where the plaintiff obtained a judgment on verdict for $2,500.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PEARCE, BOYD and SCHMUCKER, JJ.

*F. Snowden Hill* and *Wm. L. Marbury*, for the appellant.

*Marion Duckett* and *James C. Rogers* (with whom was *Jos. C. Mattingly* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant for libel and this appeal was taken from a judgment recovered in favor of the former. The alleged libelous words were contained in a letter written by the appellant to Mr. Murray Vandiver, Chairman of the Democratic State Central Committee, a few days before the election held for Governor and other officers, on the 7th day of November, 1899. The Hon. Lloyd Lowndes was then Gov-

ernor of Maryland and was a candidate for re-election. The appellant had been a prominent Republican. After referring to the removal by Governor Lowndes of a supervisor of election and the appointment of the appellee in his place, the portion of the letter quoted in the declaration thus speaks of the appellee: " This man Brown was a Justice of the Peace under Democratic rule, and at that time kept a speak-easy, where he sold whiskey, and then as Justice fined the men for disorderly conduct. He helped stuff the ballot-box at the Republican primaries in Vansville District two years ago, and has no moral character whatever. This is the man that Governor Lowndes has appointed as election supervisor. A man that everyone who knows him believes can be induced to perpetrate any crime in politics that will pay him. I shall therefore support Colonel Smith, and hope all Republicans and Democrats who believe in the purity of the elections, will do the same."

1. The defendant filed the general issue plea and nineteen pleas of justification. A number of the latter were demurred to and the rulings of the Court in sustaining the demurrers to the sixth, seventeenth, eighteenth, nineteenth and twentieth present the first questions for our consideration. The sixth undertook to justify the statement that the plaintiff " has no moral character whatever," by alleging that he was the agent of the Havener Baking Company of Washington City to sell bread and crackers for said company upon commission, to deliver them to the purchasers, collect the money therefor and return it to the company, " and that in the course of such agency the plaintiff received from said company large quantities of bread and crackers which he has not returned to said company and the value of which, to wit: thirty-six dollars and forty cents he has not returned to said company, although demand therefor has been made upon him, the plaintiff, by said company."

The mere statement of that alleged justification, in the words of the plea, is sufficient to relieve us of further discussion of it, as it will be observed that it is not even alleged

that the appellee had received the money, and there is nothing in the plea that in any way justifies the charge referred to in it.

2. The seventeenth, eighteenth, nineteenth and twentieth pleas can be considered together. They undertook to justify the statement that the plaintiff was "a man that every one who knows him believes can be induced to perpetrate any crime in politics that would pay him," by alleging that the plaintiff committed the wrongs spoken of in the fifth plea and also that he was one of the judges of election for the election held in *November, 1900,* and while so acting as such judge gave a reward to wit: the sum of one dollar and seventy-five cents to a registered voter of his district to secure his vote. That is the statement in the seventeenth plea which differs but little from the other three. The only question we need consider in reference to them is whether the defendant is entitled to justify by alleging that the plaintiff had done those acts at the election held in *November, 1900,* which was the year after the publication of the alleged libel. As was said in *Lewis* v. *Daily News Company,* 81 Md. 473, " every publication injurious to the character is, in law, false and malicious, until the presumption of falsehood is met by plea of the truth or the presumption of malice is removed by showing a justifiable occasion or motive." That being so it is difficult to see how an act done a year afterwards can be said to meet the presumption that the publication was false. In 18 *Ency. of Law* (2nd ed.), 1069, a great many cases are cited to sustain the statement in the text that " to constitute a justification, the precise charge must be justified, and it will not be sufficient, to offer truth of another charge, though of the same general nature, and though distinct only as to the subject-matter or the time and place." It cannot be claimed that the statement made in the letter of defendant which is referred to in those pleas was based on what occurred a year afterwards. So far as the acts set out are concerned, the defendant was not justified in what he said of the plaintiff in November, 1899, and no one could have been so gifted with prophecy as to have

believed in 1899 that the plaintiff could be induced to perpe-
trate any crime in politics that would pay him, by reason of
what he afterwards did in 1900. The defendant in a case of·
this character is exempted from liability when he proves that
what he published of the plaintiff was true, but unless he does,
or the publication is protected by privilege, it is not justified,
even if the defendant in good faith believed the charges to be
true and otherwise acted without malice. 18 *Ency. of Law*,
1074. It was very ingeniously argued by the appellant's attor-
neys that the charge was that he " *can* be induced," etc., and
hence his subsequent conduct tended to sustain that statement.
But the defendant said of him that he was " a man that every
one *who knows* him *believes* can be induced"—that is every
one who knew him at the time of the publication *then* be-
lieved that he could be induced to perpetrate any crime in
politics that would pay him. · It was impossible for those who
knew him to have formed such belief from what had not then
occurred. If· he had been previously guilty of such acts as
would justify such a conclusion, there would be some founda-
tion for the statement, but if up to that time he had not been
thus guilty then it was not true when made, and it was none
the less untrue then, even if a year afterwards he did some-
thing which might tend to show that he was at that time that
character of a man. No authority has been cited by the ap-
pellant to sustain the contention and, in the absence of some··
binding authority, we can see no reason for adopting a posi-
tion that would give the alleged acts in 1900 such a retro-
spective effect as is claimed for them. We think the demur-
rers to those pleas were properly sustained.

3. There are four bills of exception in the record. The
first embraces a ruling of the Court in admitting a circular
containing this letter and the others refer to the prayers. It
will be more convenient to first consider the rulings on the
prayers. Those offered on the part of the defendant were
based on the theory that this communication from appellant to
Mr. Vandiver was privileged and therefore in the absence of
proof of express malice he was not liable. It is contended

that it was the *duty* of the appellant to make known such information as he had concerning the appellee, who had been appointed a supervisor of election. It is conceded that it was for the Court to determine whether or not this communication was privileged. There was no testimony offered on the part of the defendant, and it was admitted by counsel that Mr. Vandiver, if present, would testify as set out in a statement filed in the case, which shows the position he occupied, his duties and that the defendant wrote the letter to him on the 4th day of November, 1899. It is difficult to understand how it can be contended from what appears in the record that this letter was written by the appellant for the purpose of giving to Mr. Vandiver information concerning the appellee, in discharge of a duty he, as an elector, owed the public. It is apparent that it was aimed at Governor Lowndes and the object was to affect his candidacy. The statements about the appellee were given as reasons for the appellant not supporting Governor Lowndes, and manifestly were not intended to enable Mr. Vandiver to take any steps towards the removal of the appellee, who was appointed by the Governor, who alone was authorized to remove him, for good cause shown, upon written charges and after notice and hearing. Code, Art. 33, sec. 3. If such charges has been made in good faith by the appellant against the appellee, to the Governor, in an effort to have him removed, and the appellee was complaining of that, the appellant would occupy a very different position from that he has placed himself in. There may be a justification from the occasion in some classes of cases and then the words must be proved to be malicious as well as false, to entitle the plaintiff to recover. In *Fresh* v. *Cutter*, 73 Md. 92, this Court quoted, with approval from *Harrison* v. *Bush*, 5 El. and Bl. 344, that such justification arises when a communication is " made *bona fide* upon any subject-matter in which the party communicating has an *interest*, or in reference to which he has a *duty*, if made to a party having a corresponding interest or duty * * * and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation." But

that cannot be extended to an occasion such as this letter presents. Surely the appellant owed no such duty to Mr. Vandiver, or the political party he represented, or to the public as authorized him to thus speak of the appellee, under the protection of the above rule. Nor can it·be said that he had such an *interest* as is there referred to. To so extend the rule would place a premium on abuse, which is unfortunately already too freely used during political campaigns for the good of the country.

The authorities are not altogether uniform as to how far a public officer, who is a candidate before the people for re-election can be criticised, without subjecting the writer to a suit for damages. In this State it has been said that while the official conduct of a public officer may be discussed and criticised, within lawful and proper limits, " if one goes out of his way to asperse the personal character of a public man, and to ascribe to him base °and corrupt motives, he must do so at his peril ; and must either prove the truth of what he says or answer in damages to the party injured." *Negley* v. *Farrow*, 60 Md. 177. In 18 *Ency. of Law*, 1041, it is stated that " the prevailing rule is that charges imputing a criminal offense or moral delinquency to a public officer cannot if false be privileged, though made in good faith and this though the charge relates to an act of the officer in the discharge of his official duties," and many cases are cited. In the same volume on page 1042 the right is fully recognized to discuss the fitness of a candidate for office and to communicate to other electors any facts within his knowledge concerning the candidate's character or conduct, and express his opinion thereon " so long as he states as facts only the truth and as opinion only honest belief," but it is said to be the prevailing rule that " the publication of falsehoods against the character of the candidate, as for instance charges imputing to him a criminal offense, whether the charge relates to the candidate's prior official conduct or not, does not come within the domain of a privileged communication." While there are some authorities that hold that defamatory words published of a candidate are

privileged, if circulated in good faith, or according to some of them if founded on probable cause, there are none that we are aware of, and if there were such we would not follow them, that go to the extent contended for in this case. This letter was doubtless intended, as we have said, to affect Governor Lowndes' candidacy, but if the greatest possible latitude be given to such publication against one situated as he was, being a public official who was a candidate for re-election, it cannot be that the appellant was privileged to make such charges against the appellee, who was not a candidate for office at that election, if they be not in fact true. Is it to be said that in order to inform the public of the conduct and character of a candidate for office, any elector can publish false and defamatory statements about any appointee of such candidate without being called upon to answer for them, unless the injured party can establish express malice? To announce such a doctrine would in many cases result in refusing those thus wronged redress for injuries which are far dearer to most men than loss of property, for which the law furnishes relief against the wrongdoer, as it would often be impossible to establish express malice. Freedom of speech and liberty of the press are among the boasted rights of the people of this country, but the abuse of either is not only calculated to cause breaches of the peace, but to do irreparable injury to innocent persons. If every appointee of a President, Governor, or other officer seeking re-election, is to be liable to be subjected to false charges, imputing crimes or other acts that bring reproach upon him, and he is to be deprived of all redress on the theory that words so uttered or published are privileged, then indeed is his lot an unfortunate one. When public officers, for political or other purposes, select for important positions those who are utterly incompetent or of bad character, such officers deserve to be exposed, but when direct and specific charges are made against their appointees, in order to injure the candidates who appointed them, the publisher of them ought to be prepared to establish them by proof. Our Declaration of Rights declares " that any citizen

of the State ought to be allowed to speak, write and publish his sentiments on all subjects, *being responsible for the abuse of that privilege."* It is a gross abuse of that privilege to falsely prefer such charges as are made against the appellee in this letter, in order to affect the result of an election at which the one who appointed him was a candidate, and nothing short of proof of their truth can justify their publication. When, therefore, the appellee proved that the appellant had sent this letter to Mr. Vandiver the appellant was called upon to establish the charges made in it and having offered no evidence in support of them his pleas of justification were not supported, and presented no bar to the plaintiff's suit.

From what we have said it follows that the first prayer of the defendant offered at the close of the plaintiff's case was properly rejected. It asks the Court to instruct the jury that the plaintiff had offered no evidence legally sufficient to entitle him to recover.

The second, third and fourth were likewise properly rejected. They were on the theory that the letter was a privileged communication and as the plaintiff had offered no proof of express malice to him on the part of the defendant, or of the falsity of the libelous words, or that they were composed, written and published by the defendant without reasonable and probable cause, the verdict must be for the defendant.

The plaintiff then offered six prayers, all of which were granted. Having determined that the letter was not written on a privileged occasion, there can be no objection to the first. The second was on the measure of damages. The only question as to that is whether it was proper to authorize the jury to give exemplary or punitive damages without proof of express malice. While the decisions of some other Courts have differed on that subject, it is settled in this State in a case such as this, where the publication was not privileged and no excuse for it was offered. In *Fresh* v. *Cutter*, 73 Md. 87, it was held that an instruction allowing punitive damages without finding existence of actual malice was erroneous, because there were facts in that case to be passed on by the jury which

raised the question of a qualified privilege, but the Court approved of such an instruction which was given in *Padgett* v. *Sweeting*, 65 Md. 404, where there was no such question. See also *Blumhart* v. *Rohr*, 70 Md. 328; *Nolan* v. *Traber*, 49 Md. 460.

The third prayer instructed the jury that the letter was libelous and imputed malice and explained what the word "malicious" meant. We see no objection to it. The fourth and fifth had reference to the evidence necessary to sustain the pleas of justification. As the defendant offered no evidence on that subject, they were wholly unnecessary, but the defendant was not injured by them.

The sixth was "That the jury in considering the evidence and pleadings in this case are instructed that an unsustained plea of justification is in the nature of a repetition of the libel and is to be taken as evidence tending to show express malice in the original publication, and is therefore a matter in aggravation of damages." It is very generally recognized by the authorities that a plaintiff in an action of libel may offer evidence of a republication of the libelous matter for the purpose of showing malice and thereby aggravating the damages. They differ, however, as to the effect of an unsustained plea of justification and although some Courts of high authority have taken the contrary view, we are of the opinion that such a plea, when not sustained, is evidence of malice and is an aggravation of the wrong. The defendant in a suit of this character is authorized to prove the circumstances under which the alleged libel was published and may, under the general issue plea, give evidence of such facts and circumstances as show "probable grounds. of suspicion of the plaintiff's guilt, calculated at the time to impress the belief of that truth" in mitigation of damages provided they do not amount ·to a justification or prove the truth of the words used. That is allowed because the damages to be commensurate with the offense should be regulated by the *animus* with which the publication is made and if there be proof that it was done under a belief that it was true—the belief being founded on

reasonable grounds—the jury should properly take that into consideration in assessing the damages.   If, on the other hand, when the party is brought into Court to answer a charge of libel he undertakes to meet it by placing on the public records the allegation that what he published was in fact true, and then utterly fails to establish it, why should he not be held responsible for it?   If he made an apology for the publication it is generally admissibie in mitigation, and if he thus still stands by the original libel it should aggravate the damages.   What can do greater injury to the character of a man than to have it known that a responsible party sued for libel has thus asserted the truth of his statement?   The public may believe that the original publication was the result of a misunderstanding, or false information, but when the publisher has asserted his readiness to prove his statement, in a judicial proceeding, many may thereby be led to believe that there was some foundation for it.   This Court has therefore adopted the view that it is evidence of malice.   *Blumhart* v. *Rohr*, 70 Md. 342; *Rigdon* v. *Wolcott*, 6 G. & J. 419.

The defendant afterwards offered seven prayers which were passed on by the Court.   They all proceed on the theory that the letter was a privileged communication, and after what we have said on that subject it is unnecessary to discuss them. They were properly rejected.

This brings us to the only remaining question in the case, which is presented by the first bill of exceptions.   The plaintiff offered a circular which begins: " Honorable Charles E. Coffin against Lloyd Lowdes.   Honorable Charles E. Coffin, former Republican State Senator for Prince George's County, and former Republican member of Congress from the Fifth District, writes as follows to Honorable Murray Vandiver, Chairman of the Democratic State Central Committee.   Why · Governor Lowndes should not be elected," and then follows the letter written by the appellant.   The introduction of that circular was objected to.   Counsel for the plaintiff stated that it was offered to the jury for a two-fold purpose, " First that they may see and understand if there was any express malice,

and second, in order that they may determine and ascertain the amount of damages the person has suffered by reason of such publication." After argument the Court admitted it and gave his reasons for doing so. The defendant excepted to the opinion and decision of the Court. There is no evidence that the defendant was in any wise responsible for the publication of this paper, excepting what can be gathered from the face of the letter itself, and the fact that it was written by the defendant, on the eve of an election, to the Chairman of the Democratic Committee. It is argued that the style of the letter and the expressions used in it, in connection with the fact that it was thus sent to Mr. Vandiver, whose duty it was to promote, as far as possible, by all lawful means, the election of a Democratic candidate, showed that it was intended by the writer that it should be so used by Mr. Vandiver. It is said in 18 *Ency. of Law* (2nd ed.), 1018, " one who sends or gives a libelous communication to another and thus puts it in circulation is, it has been held, responsible for such subsequent publications as are the natural consequences of his act," and a number of authorities are cited to sustained that statement. But, as was said in *Zier* v. *Hofflin*, 33 Minn. 66, it is for the jury to determine whether the additional circulation given to the libel by a third person is a natural consequence of the defendant's act. The language use in this letter, the way in which it begins and ends, the person to whom it was addressed, and the time it was written might, under some circumstances, furnish some evidence from which the jury might find that its republication in some form was a natural consequence of the defendant sending, but that was for the jury and not the Court to determine.

But before such a question is submitted to the jury there ought at least to be some evidence tending to show the circumstances of the republication. The record is silent on that subject. It is not only not shown that the appellant was in any way connected with the publication of the circular but it is not shown that Mr. Vandiver ever authorized the publication of it or even knew of it. It would be carrying this doc

trine very far to let the jury assume that it was done by authority of the defendant, under the circumstances. If any one addresses a communication to a newspaper the presumption is that he intended to have it published, but merely because the defendant sent it to the committee of a political party it should not be assumed that he intended, or supposed, that it would *thus* be made use of, and it is possible it was done without the knowledge of Mr. Vandiver or appellant. The parties who did circulate it are not shown to be connected with either. Without some evidence as to how or by whom it was published, the jury could not possibly know whether it was a natural consequence of the original publication and it ought not to have been admitted, in the absence of more evidence than appears in this record.

But if we assume that there was sufficient evidence to justify its admission, what the Court said in admitting it was reversible error. The record shows that the Court said amongst other things " it looks as if the implied authority, certainly the reasonable expectation of it, is that that party would make known that communication in whatever direction he pleased to do. The view cited by the counsel from Baltimore is unquestionably the correct one, and the Court's opinion would have followed that line if this had been a transaction passing between merely private persons. But here is a communication addressed in the midst of a campaign to the political manager of a party of the opposite faith, a communication which in its character was likely to have and presumably was intended to have, its effect upon the public. It could not reach the public except by being spread abroad by the party to whom it was addressed. He was the most likely person. It cannot be that it was intended to rest solely in the bosom of the party to whom it was addressed. * * * This was sent to a source through which men knew and expected there would be publication. It was the business of those men at that time to spread abroad every communication that was sent to them that had political bearing likely to affect favorably the party they were advocating. That is the principle.

In that view the Court will rule the evidence admissible." As we have seen, the defendant excepted to the "opinion and decision of the Court." The language thus used by the Court, in the presence of the jury, was certainly calculated to affect the jury and thereby injure the defendant. The Court in effect said that the publication of the circular was a natural consequence of the defendant sending the letter to Mr. Vandiver at that time. The circular being admitted with that statement, the jury might very naturally think that that question was settled by the Court while, as we have seen, it was a question for the jury. If a written instruction had been granted to the effect of what we have quoted, there could be no doubt that it would have been error, and such an oral statement, in the presence of the jury, was calculated to greatly injure the defendant, and perhaps make it useless for his connsel to argue that question before the jury.

We are aware that it is sometimes difficult for the Court to assign reasons for its rulings without saying something that may unintentionally affect the jury. But if a judge makes a statement which shows his opinion of a question of fact which the jury is to pass on, it is very apt to make an impression on some, if not all, of the jurors and great care should be exercised to avoid it. In this case, although it was doubtless altogether unintentional on the part of the learned Judge who presided below, we are convinced that what he said was liable to influence the jury on an important question of fact, and hence it was error for him to make such a statement. If the jury believed the defendant was responsible for the publication of that circular, the damages would doubtless be larger than if the contrary view was taken, as the original letter, if it had not been copied in the circular, would have reached comparatively few persons, if any, other than Mr. Vandiver, to whom it was addressed. The subject is discussed in 11 *Ency. of Pl. and Pr.*, 114, etc., where a number of cases are cited, some of which fully sustain the view we have taken and show that such a statement, made in the presence of the

jury, in passing on a question of evidence, is reversible error.

<div align="center">

*Judgment reversed, appellee to pay the costs and a new trial awarded.*