SEARS, ROEBUCK AND CO. *v.* LOUIS JAY ULMAN

[Misc. No. 9, September Term, 1979.]

*Decided April 8, 1980.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Peter F. Axelrad,* with whom was *Robert W. Hesselbacher, Jr.,* on the brief, for appellant.

*Robert E. Chapman* and *Gilbert B. Weiner,* with whom were *Ulman & Ulman* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The United States District Court for the District of Maryland has certified two questions of Maryland law for our consideration pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974, 1980 Repl. Vol.), § 12-601 *et seq.* of the Courts and Judicial Proceedings Article. The questions are:

> "1. (a) Does a new and separate cause of action accrue against the publisher of a libelous statement each time a third party republishes the libelous statement under circumstances in which the republication can be said to be the natural and probable consequence of the original publication?
>
> "(b) If a new cause of action does so accrue, does the Statute of Limitations enacted as Section 5-105 of the Courts and Judicial Proceedings Article, Annotated Code of Maryland, begin to run on the date of the republication?
>
> "2. (a) Does a new and separate cause of action accrue against the publisher of a libelous statement each time a third party republishes the libelous statement if the publisher has actually or presumptively authorized or directed the republication?
>
> "(b) If a new cause of action does so accrue, does the Statute of Limitations enacted as Section 5-105 of the Courts and Judicial Proceedings Article, Annotated Code of Maryland, begin to run on the date of the republication?"

The United States District Court's order further provided that the above phrasing of the questions was not intended to restrict this Court's consideration of the issues, and that,

"[b]ased upon its analysis of the Declaration and other pleadings, the Court of Appeals may restate the issues in any manner consistent with the questions presented." *See Krashes v. White*, 275 Md. 549, 557, 341 A.2d 798 (1975).

The underlying facts are as follows. On November 3, 1978, the plaintiff Louis Jay Ulman filed in the Circuit Court for Howard County a two-count declaration seeking damages from the defendant Sears, Roebuck & Co., based upon allegations that the defendant in February 1975 falsely reported to a credit reporting agency that the plaintiff's credit account with Sears was delinquent. The first count was a libel action and the second count was grounded on the defendant's alleged negligence. The declaration recited that the plaintiff first learned of the false credit report over three and one-half years later, when, in September 1978, he applied for a credit account with J. C. Penney Company, Inc., and was refused because of the delinquency falsely reported by the defendant in 1975. The plaintiff claimed that he thereupon ordered a copy of his credit record from the reporting agency, which he received, dated September 29, 1978.

The defendant removed the case from the circuit court to the federal district court, based on diversity of citizenship, and filed a motion to dismiss on the theory that the causes of action were barred by limitations. Sears argued that both the libel and the negligence causes of action accrued in February 1975 when the false credit report was sent to the credit reporting agency and thus limitations had run long before the declaration was filed in November 1978. The district court filed an opinion holding that, although the negligence count was barred by limitations, the libel count was not so barred. The court relied upon *Coffin v. Brown*, 94 Md. 190, 50 A. 567 (1901), and *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957). This Court in *Coffin* stated that "'one who sends or gives a libelous communication to another and thus puts it in circulation is . . . responsible for such subsequent publications as are the natural consequences of his act.'" 94 Md. at 201. The Virginia Supreme Court of Appeals held in *Weaver* that

where a republication of the libel by a third party was the natural and probable consequence of the original publication, the republication constituted a separate cause of action against the original publisher, and the statute of limitations for that separate cause of action would begin running only after the republication had occurred. The federal district court was of the view that, in light of *Coffin v. Brown, supra,* this Court when confronted with the issue would agree with the *Weaver* holding.

The defendant Sears filed a motion for reconsideration, and then requested that the federal district court certify the statute of limitations matter to this Court. The federal court granted the request for certification and designated Sears as the appellant.

In this Court, Sears reiterates its argument that limitations began to run in February 1975, even though the plaintiff did not learn about Sears's action until September 1978. The plaintiff's primary argument is that we should adopt the position of the Virginia court in *Weaver v. Beneficial Finance Co., supra,* namely that in a libel action, where a third party's republication of the libel was a natural and probable consequence of the original publication, limitations begin to run anew from the time of the republication. As an alternative argument, the plaintiff urges that we should apply the so-called "discovery rule" in a fact situation such as alleged here.

Maryland Code (1974, 1980 Repl. Vol.), § 5-105 of the Courts and Judicial Proceedings Article, states that an action for libel or slander "shall be filed within one year from the date it accrues." Section 5-101 of the same article provides generally that a civil action, including a negligence action, "shall be filed within three years from the date it accrues." If the plaintiff's causes of action accrued when Sears committed the wrongful act in February 1975, then obviously both the libel action and the negligence action were barred when the declaration was filed on November 3, 1978. On the other hand, under either theory advocated by the plaintiff, the libel action would have been timely filed. Both the republication of the libel, and the plaintiff's

discovery of the wrongful act, occurred in September 1978, just slightly more than a month before the declaration was filed. In addition, if the discovery rule is adopted in these circumstances, the negligence action would also have been timely filed. Although the "republication" theory adopted by the district court would be applicable only to a defamation action, this would not be true with respect to the discovery rule.

Consistent with the authorization in the certification order, we do not answer the questions as phrased in that order. Instead, based upon our analysis of the declaration, we shall deal with the underlying issue in terms of the discovery rule. We hold that in a tort action grounded upon facts such as alleged in the declaration here, the cause of action for purposes of limitations, whether sounding in libel or negligence, accrues when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff. Since, under the allegations in this case, the plaintiff did not know, and reasonably should not have known, of this until September 1978, neither cause of action is barred by limitations. In light of our holding, we need not, and thus do not, decide whether limitations in a libel action begin to run anew upon a republication which is the natural and probable consequence of the original publication.

As this Court has pointed out on numerous occasions, a tort cause of action normally accrues for limitations purposes when the wrongful act occurs, because "[o]rdinarily, a potential tort plaintiff is immediately aware that he has been wronged." *Harig v. Johns-Manville Products,* 284 Md. 70, 76, 394 A.2d 299 (1978). Nevertheless, long ago the Court recognized, and has continued to recognize, that fairness to a plaintiff who has not slept on his rights justifies exceptions to this general rule. Thus in *Belt v. Marriott,* 9 Gill. 331, 338 (1850), it was indicated that, although the statute of limitations in an action of trover ordinarily begins to run from the conversion, the rule would be different if the plaintiff were unable to discover the

conversion because of the defendant's fraud.[1] And in 1917, the Court took the position that in a medical malpractice case, the statute of limitations would begin to run from the time the alleged injury was discovered, *Hahn v. Claybrook*, 130 Md. 179, 187, 100 A. 83 (1917). Subsequently the Court applied the discovery rule in a variety of situations, such as, *e.g.*, the negligent design and construction of a stone wall on another's land,[2] negligent placing of markers by a civil engineering firm,[3] malpractice by an attorney,[4] accounting malpractice,[5] negligence by an architect,[6] and damage to land caused by a nuisance.[7] Just a little more than a year ago, in *Harig v. Johns-Manville Products, supra,* 284 Md. at 71, we held "that a plaintiff's cause of action for latent disease, whether framed in terms of negligence or strict liability, accrues when he discovers, or through the exercise of reasonable care and diligence should have discovered, the nature and cause of his disability or impairment."

In the *Harig* case, Chief Judge Murphy for the Court extensively reviewed the Maryland law regarding the running of limitations in tort cases, the several cases applying the discovery rule, and the reasons for applying the discovery rule in certain circumstances. In holding that the reasons behind the discovery rule were equally applicable in latent disease cases, Chief Judge Murphy stated (284 Md. at 80):

> "Like the victim of undiscoverable malpractice a person incurring disease years after exposure cannot have known of the existence of the tort until some injury manifests itself. In neither case can the tort victim be charged with slumbering on his

---

1. Maryland Code (1974, 1980 Repl. Vol.), § 5-203 of the Courts and Judicial Proceedings Article, embodies this principle and applies a discovery rule whenever an adverse party's fraud keeps the plaintiff in ignorance of the wrong.

2. Callahan v. Clemens, 184 Md. 520, 41 A.2d 473 (1945).

3. Mattingly v. Hopkins, 254 Md. 88, 253 A.2d 904 (1969).

4. Mumford v. Staton, Whaley & Price, 254 Md. 697, 255 A.2d 359 (1969).

5. Feldman v. Granger, 255 Md. 288, 257 A.2d 421 (1969).

6. Steelworkers Holding v. Menefee, 255 Md. 440, 258 A.2d 177 (1969).

7. Goldstein v. Potomac Elec. Power Co., 285 Md. 673, 684, 690, 404 A.2d 1064 (1979).

rights, for there was no notice of the existence of a cause of action. This feature distinguishes these situations from ordinary tort cases, which require no exception to the general rule that knowledge of the wrong is immaterial, because usually some harm will be apparent to a reasonably diligent plaintiff."

And later (*ibid.*):

"Avoiding possible injustice in such cases outweighs the desire for repose and administrative expediency, which are the primary underpinnings of the limitations statute."

After reviewing decisions in other jurisdictions applying the discovery rule in tort actions involving a latent disease, the Chief Judge concluded in *Harig* (*id.* at 83):

"It is thus clear that authorities from other jurisdictions recognize the applicability of the discovery rule in contexts other than professional malpractice. We think our earlier decisions applying the discovery rule to professional malpractice actions are properly to be extended to cases involving, as here, latent disease. Both classes of tort plaintiffs may, in appropriate circumstances, be 'blamelessly ignorant' of the fact that a tort has occurred and thus, ought not be charged with slumbering on rights they were unable to ascertain. Therefore, in situations involving the latent development of disease, a plaintiff's cause of action accrues when he ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his injury."

The same reasoning is applicable in the present case. Until he applied for credit and was turned down in September 1978, the plaintiff did not know, and would not reasonably have been expected to know, that Sears had filed a false credit report with the credit agency. In this type of

situation, a person is ordinarily not aware of any injury from a false credit report until such report is republished by the credit agency and used against that person. There are no facts set forth in this case which would even suggest that the plaintiff should reasonably have known before September 1978 that he had been injured by Sears. To use the language from *Harig,* 284 Md. at 83, the plaintiff here was " 'blamelessly ignorant' of the fact that a tort [had] occurred and thus, ought not be charged with slumbering on rights."

At least two other states have applied the discovery rule in similar circumstances. The Supreme Court of Illinois held, in a defamation action against a credit reporting agency, that "the plaintiff's cause of action accrued at the time it knew or should have known of the existence of the allegedly defamatory report." *Tom Olesker's Excit. W., Etc. v. Dun & Bradstreet, Inc.,* 61 Ill. 2d 129, 136, 334 N.E.2d 160, 164 (1975). The Illinois court recognized "the manifest injustice of permitting persons investigated to be silently wronged through inaccurate reporting." 61 Ill. 2d at 137, 334 N.E.2d at 164. The Supreme Court of Texas recently adopted this rule in *Kelley v. Rinkle,* 532 S.W.2d 947 (1976), stating that "the period of limitations for causes of action for libel to one's credit reputation by publication of a defamatory report to a credit agency begins to run when the person defamed learns of, or should by reasonable diligence have learned of, the existence of the credit report." 532 S.W.2d at 949. The court pointed to the policy considerations justifying its decision (*ibid.*):

> "While the pervasive use of credit reporting agencies makes acquisition of credit much easier and more efficient, it also creates a potential for great abuse by those who would use the system to wrongfully injure the credit reputation of another. We believe that a rule by which limitations would commence from the date of the wrongdoer's report to the credit agency would merely enhance that potential."

In sum, based upon the facts alleged in the plaintiff's

declaration, we hold that under Maryland law his action was not barred by limitations.

> *Questions of law answered as herein*
> *set forth.*
> *Appellant to pay costs.*