**INTERPHASE GARMENT SOLUTIONS, LLC, et al.**

v.

**FOX TELEVISION STATIONS, INC.**

**Civil Action No. DKC 2007–2940.**

United States District Court,
D. Maryland.

June 6, 2008.

Roland N. Patterson, Jr., Law Office of Patterson and Associates LLC, Owings Mills, MD, for Plaintiffs.

Laura Rose Handman, Lisa Beth Zycherman, Davis Wright Tremaine LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

DEBORAH K. CHASANOW, District Judge.

Presently pending and ready for resolution in this case are (1) a motion to dismiss by Defendants Fox News Network, LLC and Fox News, Inc. (paper 14); (2) three motions that seek to substitute Fox Television Stations, Inc. as the proper Defendant (papers 15, 21, and 24); and (3) two motions to file surreply by Plaintiffs Interphase Garment Solutions, LLC (IGS) and Mark Coleman, President and Chief Executive Officer of IGS (papers 22 and 25). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the initial motion to substitute defendant will be granted, Defendants' motion to dismiss will be granted, and the motions to file surreply will be denied. The additional motions to substitute defendant are moot.

## I. Background

Plaintiffs filed suit against Defendants in the Circuit Court for Prince George's County on September 27, 2007. The complaint contains four claims: (1) Intentional Interference with Contractual Relations; (2) Intentional Infliction of Emotional Distress; (3) Defamation; and (4) Invasion of Privacy. On October 30, 2007, Defendants removed the action to this court.

The gravamen of Plaintiffs' complaint is that they were harmed by a series of broadcasts in late August 2006 on Fox News Channel Five. The broadcasts concerned performance of a contract under which IGS agreed to provide school uniforms for students at several Prince George's County Public Schools. According to Plaintiffs, the broadcasts falsely alleged that Mr. Coleman had failed to complete his contractual obligations under a similar arrangement to provide uniforms to Providence Hospital of Washington, D.C.

Defendants filed a motion to dismiss (paper 14) and a motion to amend the complaint pursuant to Rule 21 (paper 15) on November 30, 2007. Plaintiffs opposed the motion to dismiss. Plaintiffs also filed two surreply memoranda (papers 22 and 25). Plaintiffs filed a motion to amend the complaint (paper 21) and a motion to substitute defendants (paper 24). Both of those motions appear to join with Defendants' motion to amend in support of substituting Fox Television Stations, Inc. as a Defendant in lieu of the two named Defen-

dants because that is the corporate entity that owns the television station that aired the broadcasts at issue.

## II. Motion to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, — U.S. ——, 127 S.Ct. 1955, 1965 n. 3, 167 L.Ed.2d 929 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v.*

*Hirst*, 604 F.2d 844, 847 (4th Cir.1979). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c) and is not usually an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md.2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md.2002). However, dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston–Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir.1996). *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3rd Ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

### B. Analysis

#### 1. Defamation Claim

Plaintiffs base their defamation claims on three broadcasts on Fox News Channel Five on August 26, 28, and 29, 2006. Their complaint was filed on September 27, 2007. Defendants assert that these claims are time barred because they were not brought until after the expiration of Maryland's one year statute of limitations. Plaintiffs respond that the "discovery rule" allows their claims to proceed because Plaintiffs did not experience the harm from the alleged defamatory acts until

their contract to provide the school uniforms was breached in September 2006.[1]

In Maryland, defamation claims are subject to a one year statute of limitations. MD.CODE ANN. CTS. & JUD. PROC. § 5–105 ("[a]n action for assault, libel, or slander shall be filed within one year from the date it accrues"). A cause of action for defamation generally accrues upon the publication of the defamatory material. *Shepard v. Nabb*, 84 Md.App. 687, 696, 581 A.2d 839 (1990). Plaintiffs, however, seek to extend the date of accrual here on the basis of the discovery rule, which provides that "a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334, 635 A.2d 394 (1994).

Maryland does, generally, apply the discovery rule to defamation cases. Defendants contend, however, that the discovery rule does not apply to media broadcast cases because, although Maryland has not squarely held so, other courts *"uniformly* have rejected the application of the discovery rule to libels published" by the mass media. *Shively v. Bozanich*, 31 Cal.4th 1230, 1250, 7 Cal.Rptr.3d 576, 80 P.3d 676 (2003) (emphasis in original). *See also Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 297 (D.C.2001) (stating that "the virtually unanimous rule in this country," is that the statute of limitations be-

gins to run in mass media publication cases from the date of public dissemination); *Henderson v. MTV*, 34 Med. L. Rep. 1725, 1727, No. 05–1937, 2006 WL 1193872, at *1 (D.D.C. May 3, 2006).

Even if the discovery rule applies to Plaintiffs' claims, they would still be barred by the one year statute of limitations because Plaintiffs concede that they knew of the broadcasts at the time they were aired. As the courts have explained, under the discovery rule, a cause of action accrues when the plaintiff "knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff." *Sears, Roebuck and Co. v. Ulman*, 287 Md. 397, 401, 412 A.2d 1240 (1980). *See also Shepard v. Nabb*, 84 Md.App. at 697, 581 A.2d 839 (stating that the discovery rule "is of no assistance" where "there is nothing in [the] record to indicate that [the plaintiff] did not know or reasonably should not have known" of the offending remarks within days of their publication).

Plaintiffs contend that the cause of action did not accrue until there was some economic harm to them from the allegedly false broadcasts. There is no support for that proposition.[2] A defamation claim is complete when the allegedly defamatory statement is broadcast because the injury to reputation is immediate. *See, e.g.,*

1. The complaint also alleges that Mr. Coleman was treated in "September 2006 for various conditions resulting from acute chronic head pain and relating to undue stress and alarm." (Paper 2 ¶ H). Plaintiffs do not contend that they were unaware of the broadcasts at the time they aired.

2. The cases cited by Plaintiffs simply are inapposite. Plaintiffs cite first to *Luy v. Baltimore Police Dep't*, 326 F.Supp.2d 682, 692 (D.Md. 2004), which found that the "one-year statute of limitations bars any claim for statements that were communicated prior to October 2002, as [the plaintiff] did not file the present

complaint until October 2, 2003." The *Luy* court cited *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470 n. 9, 665 A.2d 297 (1995), as "finding that a claim for defamation accrues on the date when statements were communicated." *Id.* Next, Plaintiffs cite *March Funeral Homes West v. WJZ–TV Channel 13*, 32 Med. L. Rep. 2207, 2211 (Md. App. Feb. 20, 2003), where the court held that the Maryland one year statute of limitations barred defamation claims based on television broadcasts that aired just more than one year prior to the filing of the complaint.

*Brown v. American Broadcasting Co., Inc.,* 704 F.2d 1296, 1300 (4th Cir.1983) (applying Virginia law). That there might be additional damage later does not delay the accrual date:

> A defamation cause of action accrues when the defamatory matter is published or circulated. *Childs v. Haussecker,* 974 S.W.2d 31, 36–37 (Tex.1998) (cause of action generally accrues when a wrongful act causes an injury, regardless when the plaintiff learns of the injury or if all the resulting damages have yet to occur); *Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 131 (Tex.App.-Houston [14th Dist.] 1994, no writ).

*Roe v. Walls Regional Hosp., Inc.,* 21 S.W.3d 647, 651 (Tex.App.2000). According to 54 CJS Limitations of Actions § 199 (2008),

> [a]s a general rule, a cause of action for libel or slander accrues, so as to start the running of limitations, at the time of publication and not on the date of discovery of the wrong, or when the alleged injury occurred. Thus, the statute of limitations on defamation actions generally begins to run when the defamatory statement is published.

(Footnotes omitted).

Thus, because Plaintiffs knew that Defendants committed the allegedly wrongful act by publishing the statements on television more than a year prior to filing suit, neither the discovery rule nor the later economic harm save Plaintiffs' claims and Plaintiffs' defamations claims will be dismissed as time barred.

### 2. Intentional Interference with Contractual Relations

■ There are six elements of a claim for intentional interference with contractual relations in Maryland:

> (1) The existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom.

*Bagwell v. Peninsula Regional Medical Center,* 106 Md.App. 470, 503, 665 A.2d 297 (1995) (internal quotation omitted).

■ Plaintiffs allege that Defendants intentionally interfered with a contract between IGS and the parents of a number of students at Prince George's County schools. Mr. Coleman cannot maintain this claim because "a shareholder or member of a corporation or LLC may not recover for tortious interference of the business or contract of the corporation or LLC." *Baron Fin. Corp. v. Natanzon,* 471 F.Supp.2d 535, 540 (D.Md.2006). IGS's interference claim fares no better because it does not allege conduct by Defendants that was intentional or improper. To demonstrate that a defendant's actions were intentional and improper, "a plaintiff must show that the defendant's conduct was 'directed at' an existing or prospective economic relationship [and not] a mere 'incidental effect' of the allegedly wrongful conduct[.]" *Cambridge Title Co. v. Transamerica Title Ins. Co.,* 817 F.Supp. 1263, 1276 (D.Md.1992). Thus, "it is insufficient to allege malicious intent generally: the plaintiff must show that the defendant specifically intended to interfere with its business relations[.]" *Fare Deals Ltd. v. World Choice Travel.Com, Inc.,* 180 F.Supp.2d 678, 691 (D.Md.2001). Plaintiffs' complaint fails to allege any specific facts that Defendants maliciously intended to damage their contractual relationships

with the parents. Thus, Count I will be dismissed.

### 3. Intentional Infliction of Emotional Distress

■ To recover for the tort of intentional infliction of emotional distress under Maryland law, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 58, 502 A.2d 1057 (1986). To satisfy the first element, the plaintiff must demonstrate that the defendant either "desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from his conduct, or acted recklessly in deliberate disregard of a high degree of probability that emotional distress would follow." *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175, 552 A.2d 947 (1989). To satisfy the second element, the conduct in question must "completely violate human dignity," and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton*, 66 Md.App. at 59–60, 502 A.2d 1057. To satisfy the fourth element, "one must suffer an emotional response so acute that no reasonable person could be expected to endure it. One must be unable to function, one must be unable to tend to necessary matters." *Reagan v. Rider*, 70 Md.App. 503, 512, 521 A.2d 1246 (1987) (internal citations omitted).

■ Because a corporation "lacks cognizant ability to experience emotions, a corporation cannot suffer emotional distress [and] no claim for intentional infliction of emotional distress lies" for Plaintiff IGS. *See, e.g., F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir.1994). Plaintiffs allege that Mr. Coleman experienced stress-related illness that led to "repeated hospital visits." Even if that is sufficient to meet Plaintiffs' requirement under the fourth element, Plaintiffs' emotional distress claim must fail because the conduct in question did not "completely violate human dignity," and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." Plaintiffs' merely allege that the broadcasts inaccurately asserted that Mr. Coleman has similarly failed to deliver on a contract to provide uniforms to a hospital. Such conduct does not rise to the level of "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Robinson v. Cutchin*, 140 F.Supp.2d 488, 494 (D.Md.2001) (internal quotation omitted). Accordingly, count two will be dismissed.

### 4. Invasion of Privacy

Plaintiffs claim that the challenged broadcasts invaded their privacy by "intentionally intrud[ing] upon the private affairs and earning ability of Plaintiffs in a manner highly offensive to a reasonable person." Plaintiffs do not identify what private facts serve as the basis for this claim in their complaint. Plaintiffs appear to base this claim on their assertion that during one of the challenged broadcasts, the reporter purported to hold a document that showed the existence of another example of a contractual breach by Plaintiffs in which they failed to provide uniforms to Providence Hospital of Washington, D.C. Plaintiffs assert that no such contract ever existed and that "magnification of the particular broadcast in question" would show that the document actually evidenced a legal action for nonpayment brought by

Providence Hospital against Mr. Coleman for an emergency room visit of his. In the opposition, Plaintiffs assert that Mr. Coleman's hospital stay was previously unknown to the public and that the airing of the broadcast would make the stay public because anyone who sought to verify the Fox report would necessarily learn this purportedly private information.

 To state a claim for invasion of privacy for the publication of private facts, "a party must show that an article publicized private facts in a highly offensive manner about an issue not of public concern." *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 719 (4th Cir.1991). Plaintiffs cannot state an invasion of privacy claim on behalf of IGS because "[a] corporation, partnership or unincorporated association has no personal right of privacy." RE-STATEMENT (SECOND) OF TORTS § 652I, cmt. c (1977) (cited in *King v. State Farm Mut. Auto. Ins. Co.*, 157 Md.App. 287, 850 A.2d 428 (2004)). As to any claims of Mr. Coleman's, the first issue is whether any "private facts" were published. Any information that was already in the public domain when published cannot qualify as private facts. *Reuber*, 925 F.2d at 719. Nor can any publication that was not "highly offensive" qualify for an invasion of privacy suit. *Id.* Plaintiffs contend that Defendants are liable for invasion of privacy because "any person seeking to verify the Fox claim would then necessarily learn [about Mr. Coleman's hospital visit] ... [and] the fact of any relationship between Mr. Coleman and Provident should have remained private." (Paper 19 ¶ 5). Even assuming *arguendo* that holding a copy of a piece of paper that when magnified greatly might show that Mr. Coleman had been engaged in litigation with Provident Hospital over the nonpayment of a hospital bill constituted a publication of that fact, the invasion of privacy claim fails because public court documents are not private facts. *Reuber*, 925 F.2d at 719 ("information [that] is already in the public domain when published by a defendant [ ] does not qualify as private facts"). Thus, the invasion of privacy claim will be dismissed.

### III. Motions to File Surreply

 Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed. Local Rule 105.2(a). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C.2001)).

Plaintiffs' proposed surreplies do not attempt to address matters presented for the first time in Defendants' reply. Rather, Plaintiffs seek merely to re-open briefing on the issues raised in Defendants' motion to dismiss and challenge Defendants' explanations of cited case law. Defendants did not raise any new issues or legal theories in their reply brief that Plaintiffs seek to rebut in their surreply, and to the extent Plaintiffs seek to re-open briefing on matters raised in the motion to dismiss, the motions to file surreply are denied.

### IV. Conclusion

For the forgoing reasons, the motion to substitute Fox Television Stations, Inc. as defendant (paper 15) will be granted, the additional motions to substitute defendants will be denied as moot, the motions to file surreply (papers 22 and 25) will be denied, and the motion to dismiss (paper 14) will be granted. A separate Order will follow.